# CHARLESTON.

## STATE EX REL. S. P. SMITH v. COUNTY COURT.

### Submitted March 28, 1916.    Decided March 31, 1916.

1. MANDAMUS—*Nature—Grounds of Remedy.*
   Clear legal right of the relator in mandamus to have performance of the act he seeks to coerce performance of, and plain duty to perform it, on the part of the respondent, are essential to the award of the writ.   (p. 171).

2. EVIDENCE—*Judicial Notice—Administration of Political Parties.*
   Courts judicially know political parties have rules and regulations for their government and tribunals for the prescription, interpretation and administration thereof, and that the rights of members and inferior or subordinate bodies of such organizations are determinable by such rules and regulations within the parties and by their tribunals.   (p. 171).

3. ELECTION—*Political Parties—Government.*
   In the absence of fraud or violation of positive law, courts will recognize and vindicate rights accorded by the decisions of such tribunals, in those cases in which a statute makes it their duty to recognize and enforce them.   (p. 171).

4. SAME.
   In the absence of a statute conferring the jurisdiction, courts will not undertake to settle and determine substantial controversies between rival political committees or factions of such a committee, the right in which is dependent upon party rules, usages and customs, nor grant relief to either of such committees or factions, as the representative of the party, in those cases in which the party is entitled to relief, but will refuse the relief asked until the controversy is settled and determined by some supervising board, committee or other tribunal of the party.   (p. 172).

5. SAME.
   Neither of two factions of a political committee, dividing on

substantial controversies governed by party usages, customs and rules, can be recognized by the courts as having *prima facie* right. (p. 172).

6. SAME.

A remonstrance or protest by one faction of a political committee made to an officer or court acting in a ministerial capacity, against performance of an act demanded on behalf of the party, by another faction claiming to represent it, and based upon allegations of fact raising questions as to the right of such faction to represent the party, determinable by its supervising committees and governing bodies, justifies refusal of the officer or court to perform the act demanded  (p. 172).

(MILLER, JUDGE, absent.)

Original petition by the State, on the relation of S. P. Smith, for mandamus to the County Court of Kanawha County and others.

*Peremptory writ refused.*

*McClintic, Mathews & Campbell* and *S. B. Avis*, for petitioner.

*Frank Lively* and *W. E. R. Byrne*, for respondents.

POFFENBARGER, JUDGE:

The relator, Chairman of the Republican County Executive Committee of Kanawha County, seeks a peremptory writ of mandamus commanding the County Court of said county to appoint, as registrars of voters therein, certain persons whose names he had certified to that body for appointment to said positions, upon averment of his right to have them appointed under the provisions of sec. 98-a-1 of ch. 3 of the Code, as amended by ch. 28 of the Acts of 1915.  From the return of the alternative writ, it appears that his presentation of the list of persons designated for appointment was met by a protest against their appointment, on the ground of alleged irregularity and invalidity of their selection.  One member of the court was willing to appoint them, another declined and the third was absent from the court and the state, on account of illness.

The grounds of the protest were: (1) that S. P. Smith, the relator, was not, and never had been, chairman of said com-

mittee; and (2) that the persons whose names were present-
ed by him had not been by it selected or designated for ap-
pointment.   These denials of right were based upon several
claims or contentions.   As elected by the republican voters
of the county in a primary election, held June 4, 1914, the
committee consisted of ten members, one from each magis-
terial district.   On some date in the year 1914, one of them,
W. F. Shirkey, elected for Malden District, resigned and the
remaining members elected John H. Hawes to fill the vacancy.
The relator was not one of the ten.   On April 4, 1914, a
resolution was adopted by the committee, electing him a mem-
ber thereof from the county at large and making him its
chairman with the right to vote in case of a tie.   Since that
date, he has acted as chairman, but the return denies au-
thority in the committee to enlarge its membership.   On
March 4, 1916, he and five members whose titles to the posi-
tions they claim are admitted, met pursuant to a notice of
a meeting of the committee, and, on the assumption of a
vacancy in the position to which S. A. Fogarty had been
chosen for Elk District, elected W. S. McAfee to that posi-
tion and thereafter recognized him as a member.   Claiming
then to have six of the ten original members and seven of
the eleven members composing the committee, as they con-
tend, they adopted a resolution purporting to confer upon
Chairman Smith power to name, on behalf of the committee,
persons for appointment as registrars.   Fogarty still claiming
his membership and four others did not attend the meeting.
They denied that Fogarty's place was vacant, that Smith
was a member and that a quorum was present when McAfee
was admitted and the resolution adopted.   Fogarty's change
of residence to a point in another state is the ground of de-
nial of his membership.   McAfee was elected to his place on
the assumption that his change of residence had *ipso facto*
vacated it.   On the other hand, it is claimed he is residing
out of the State only temporarily; that temporary absence
was not cause for his removal; and that, if it were, it did
not of itself create a vacancy, so as to reduce the member-
ship of the committee to nine of which five might have been
a quorum.   On the issues of fact entering into the contro-

versy considerable evidence was submitted, and numerous political precedents were invoked in support of the regularity and validity of the committee procedure relied upon by the relator. For both him and the respondent, it is claimed sec. 27 of ch. 26 of the Acts of 1915 vests jurisdiction in the courts to review the acts of all political committees.

Clear legal right in the relator to have the act, he seeks to coerce, performed and plain duty to perform it, on the part of the respondent, are indispensable bases of an application for the writ of mandamus. Doubt as to his right or the duty of the officer is fatal to him. *Hutton* v. *Holt,* 52 W. Va., 672; *Payne* v. *Staunton,* 55 W. Va., 684; *Marcum* v. *Ballot Commissioners,* 42 W. Va., 263, 273.

The right to the relief sought here depends upon the solution of the numerous questions raised by the protest. Seven members out of eleven, a quorum with one to spare, composed the meeting at which the resolution purporting to give the chairman authority to name the registrars, if the elected committee had power to enlarge their number by election of a member at large, and Fogarty's place had become vacant and had been properly filled. But, if the committee had no power to add to its membership, there could have been only ten members in all; and, if Fogarty had not vacated his place, less than a quorum constituted the meeting at which the resolution was passed. Whether Smith, though a member, having right to vote only in case of a tie, could be counted to make a quorum, and whether Fogarty's change of residence disqualified him, or, disqualifying him, *ipso facto* vacated his place, are questions. All of these are determinable by rules, regulations and precedents of the political party of which the committee is a tribunal, and they are made, interpreted and applied by the party committees and conventions. They are not recognized or treated as constituting any part of the public law administered by the courts, unless made so by statute. Courts judicially know political parties, like other voluntary associations, have rules and regulations for their government and tribunals for the prescription, interpretation and administration thereof, and that the rights of members and inferior or subordinate

bodies of such organizations are determinable by the rules and regulations within the parties and through their tribunals. When political rights are so settled and determined, the courts recognize them and vindicate them. *Buxton* v. *Boggess,* 67 W. Va. 679; *Republican Executive Committee* v. *County Court,* 68 W. Va. 133; *Kump* v. *McDonald,* 64 W. Va. 323, 325.

But if an inferior committee is divided into opposing factions and the demand of one of them upon a public officer or tribunal for the performance of a statutory duty toward the party such faction professes to represent, meets with resistance by way of a protest 'or remonstrance based upon facts raising issues determinable by party usages and customs, the right between them must be regarded as uncertain and undetermined. The remonstrance brings to the surface an issue for the determination of which public law known to the courts makes no provision. Of course, party usages and customs are susceptible of proof, but courts cannot interpret and apply them without invasion of the province of the party tribunals. Political parties, like fraternal and religious societies and corporations of all kinds, administer, as well as make, their rules and regulations, within the limitations prescribed by law. To assume jurisdiction or exercise power within this sphere of social influence and dominion would be a judicial invasion of right and an unnecessary one. The right of a voluntary association to interpret and administer its own rules and regulations is as sacred as is the right to make them, and there is no presumption against just and correct action or conduct on the part of its supervising or appellate authorities and tribunals. On the contrary, the presumption is in favor of it. In connecting himself with the organization, a member subjects himself as fully and completely to the power of administration, within legal limits, as to the power of legislation or prescription. To say courts can make rules and regulations for such associations would be absurd and ridiculous. To say they may interpret and apply them, in view of the powers reserved to, and exercised by, the governing bodies of the association, would be as plainly subversive of contractual right.

Nor is it the province or function of courts to do unnecessary things. They afford remedies only to those who are otherwise remediless. They afford redress to the injured, not on considerations of mere convenience, but on the ground of necessity. Therefore a member of a society of any kind, and particularly of a voluntary, unincorporated one, has no right to judicial redress or a judicial hearing of a grievance, until he shall have exhausted the remedies afforded him by the society itself. *Deveny* v. *Hart Coal Co.,* 63 W. Va. 650; *Rathbone* v. *Gas Co.,* 37 W. Va. 73.

''Where the society makes provision for the settlement of controversies between it and its members, or between its members, concerning its government, its dissolution, or its property, courts will refuse to take cognizance of such controversies until those who have grievances have, in the first instance, resorted to and exhausted the remedies provided by the society; and it is not necessary, in such a case, that the language of such provisions shall make it imperative on the members to exhaust these remedies, but it is sufficient that the society has afforded a means for a settlement within the society itself. The mere provision of such a means abridges the right to appeal to the courts, until the prescribed means have been pursued. This rule also prevails in matters of discipline, in the expulsion and suspension of members, and arises from the fact that in such cases the controversy springs from the contract of membership, and is a matter of internal regulation. With such matters courts are loth to deal, and will take jurisdiction only when compelled to do so. But it has been held that where a member appears in the relation of a creditor of the society, he is not bound to present his claim to the tribunals of the society unless such provisions stipulate expressly that he must first submit his claim to the tribunals of the society, before seeking to enforce it in the courts of the land.'' Niblack on Benefit Societies & Accident Insurance, p. 215, sec. 111.

In *Boggess* v. *Buxton,* and *Republican Ex. Com.* v. *County Court,* cited, this principle was applied to political organizations; and in *Marcum* v. *Ballot Commissioners,* 42 W. Va. 263, the court declined to recognize either of two contesting

candidates as having been regularly nominated and based the decision partly on that ground, Judge BRANNON saying: "Two clashing conventions may be so circumstanced as to warrant the conclusion that neither is authorized to speak for the party. We hold that neither of these conventions was so authorized. The law is that the writ of mandamus 'will not lie unless the relator shows a clear legal right to have the thing done, which he asks for. If the right be doubtful, the writ will be refused.' " In view of the contentions of the opposing parties, based upon party usage, custom, rules and regulations and general parliamentary law, the court declined to say either had *prima facie* right. Like conclusions are recorded in other well considered cases. *Stephenson* v. *Boards of Election Commissioners,* 118 Mich. 396; *Shields* v. *Jacobs,* 88 Mich. 164; *People* v. *District Court,* 18 Col. 26; *Phelps* v. *Piper,* 48 Neb. 724; *State* v. *Johnson,* 18 Mont. 556. In the later decisions of this court, here referred to, and those of several other jurisdictions, the analogy subsisting between political organizations and other voluntary associations has been recognized; and, that having been done, the rights of contending factions, respecting remedies in the courts, depends upon the principles upon which judicial relief relating to such associations and rights therein, is granted. *State ex rel. Hatch* v. *Smart,* 24 Mont. 413; *State ex rel. Gilchrist* v. *Weston,* 27 Mont. 185; *State ex rel. Buttz* v. *Liudahl,* 11 N. D. 320; *Moody* v. *Trimble,* 109 Ky. 139.

As has been observed, there can be no well grounded distinction between the prevailing and the losing faction respecting the application for judicial relief. To recognize the former and entertain it, over the objection of the latter, would necessarily imply judicial adoption of the procedure and conclusion upon which the advantage obtained rests. To do that either brushes aside and ignores the contentions underlying the remonstrance, as being immaterial, or compels the court to take cognizance of the disputes and determine them, under a system of rules, regulations and party law, the interpretation and application of which properly belongs to the party tribunals.

Of course there are limitations upon the powers of the

governing bodies of voluntary associations. When property rights of members are involved, the courts, will lend assistance for their protection, but, ordinarily, not until the available remedies within the organization have been exhausted. Fraud vitiates everything and becomes a ground of relief against almost every sort of transaction. Relief from oppressive and unreasonable action will be given. Mere frivolous, unsubstantial and unmeritorious grounds of resistance would constitute no obstacle to judicial relief.

The statute invoked by the relator does not govern the rights involved here, nor empower the courts to determine them. Sec. 3 of the Act provides that ''The various executive committees and officers therof, now in existence, shall exercise the powers and possess the duties herein prescribed until their successors are chosen in accordance with this act.'' It prescribes no rule or standard by which the courts can determine who constitute such committees, the very question on which this controversy hinges. When members of committees become elective under the statute prescribing qualifications, there will be such a standard. Eligibility will then depend upon conditions legally prescribed. Now it depends largely upon party usages and customs, and they are judicially known not to be uniform in any sense. Precedents set by a state committee as to its own organization, membership or procedure may not obtain in a county, or other inferior, committee. The practice in one county often differs widely from that in another. What was party law a few years ago may not be now. No legal rule nor any settled party practice enables any court to say whether an elected county committee may increase its membership; whether a member added, made chairman and given a casting vote, may be counted to make a quorum; whether a member must reside in the district for which he was elected, or in the county or state; or whether his absence temporary or permanent, in the sense of domicil, vacates his office or is ground for removal. When these memberships become statutory, as they will under the act, all such questions can be determined by the statute.

Sec. 27 of the Act provides as follows: ''The state executive

committee of each party may make such rules for the government of such party, not inconsistent with law, as may be deemed expedient; and it may also revoke, or alter, or amend, in any manner not inconsistent with law, any present or future rules of such party; and all acts of such state or other committees may be reviewable by the courts.'' Having provided for statutory committees for the state and all sub-divisions thereof and made the state committee the supreme legislative tribunal of the party, within legal limitations, the legislature has now conferred upon the courts jurisdiction to test the validity of the acts of committees by the law and the rules provided by the state committee ''for the government of such party.'' But this power does not extend to the ascertainment and determination of the constitution or composition of the old committees temporarily continued in power and authority. How far the jurisdiction of the courts will extend under the statute it is not necessary now to inquire, but it does not reach this question. It has power only to review the acts of committees, not to say who constitute or compose them, under general party law operative until displaced by the statute.

Upon these principles and conclusions, the peremptory writ of mandamus prayed for is refused.

*Peremptory writ refused.*