# CHARLESTON.

G. C. West *v.* Albert Stephenson, *President Board of Education, et als.*

(No. 6686)

Submitted February 4, 1930. Decided February 11, 1930.

*Eakle & Eakle,* for relator.

*E. G. Pierson, Sam Lopinsky* and *D. L. Salisbury,* for respondents.

MAXWELL, JUDGE:

The relator claims salary of $105.00 for services as teacher for the month of October, 1929, of the Elkview School, Henry District, Clay County. An order for said salary was issued to the relator by W. C. Bobbitt, the secretary of the board of education of said district, but the respondents Albert Stephenson, president of said board, and A. B. Boggs, superintendent of free schools of said county, and *ex officio* financial secretary of said county, have declined, respectively, to sign and counter-sign the said order and to deliver the same to relator or to the sheriff of said county for payment. By this proceeding it is sought to compel them to do so.

Relator predicates his right to mandamus upon an intended contract entered into between Naaman Shelton and Scott Stephenson, two of the trustees of said Elkview School, and relator, the 28th day of August, 1929. Respondents say that said purported contract upon which the relator relies is abortive and void, and that relator is not entitled to compensation for any services he may have rendered ostensibly in pursuance of said contract; and that there are two prior valid contracts which had been entered into between the board of education

of said district and the trustees of said Elkview School with one Wilbert Johnson to teach said school for the eight months' term beginning the first Monday in September, 1929.

It appears from the record that on the 22nd day of June, 1929, the board of education of said district, then composed of Homer Boggs, president, D. L. Wyatt, and David Summers, held a meeting and approved a list of teachers for the succeeding year, which list included the name of Wilbert Johnson as teacher for said Elkview School and did not include the name of relator. Johnson seems to have signed a contract at that time, but it was not then signed on behalf of the board. The personnel of the board changed July 1st when G. W. Butcher succeeded David Summers, and when the board convened on the first day of July it declined to approve the minutes of the meeting of June 22nd, and proceeded to appoint trustees for the several sub-districts pursuant to section 53 of chapter 45 of the Code of West Virginia. Naaman Shelton, J. W. Davis and Delbert Holcomb were appointed for the sub-district of the Elkview School. On the 12th of July, Homer Boggs resigned as president of the board of education, and the county superintendent appointed the respondent, Albert Stephenson, as his successor. Stephenson immediately, on the 13th of July, signed the contract which Johnson had theretofore signed pursuant to the action of the board on the 22nd of June. On the 8th of August Holcomb and Davis, trustees of the Elkview School (Shelton not having qualified and therefore not being notified of the meeting), met for the purpose of selecting a teacher and for the transaction of other business. They selected Johnson as teacher of said school. It is clear from the record that Davis had regularly qualified but it does not appear whether Holcomb had qualified or not, but inasmuch as he seems to have proceeded with the discharge of the duties of his office without his right to do so being questioned, he will be considered a *de facto* officer. A contract was on that day executed by both the trustees present and Johnson. Johnson promptly undertook to file this contract with the secretary of the board of education of said district, but there having been a change of secretaries there was some confusion experienced in connection

therewith. On the 27th of August the board of education held a meeting and re-elected Shelton as trustee of the Elkview School and elected Scott Stephenson in the place of Delbert Holcomb who it was understood had removed from the district. On the next day Scott Stephenson and Shelton, both having regularly qualified as such trustees, after having given due notice to Davis of their intention of holding a meeting that day, held a meeting and undertook to elect relator as teacher of said school as above stated. A purported contract was immediately executed by the said two trustees and relator and filed with the secretary of the board.

Controversy having arisen between Johnson and the relator as to which one should be the teacher of the Elkview School, the said board of education convened on the 9th of November and after a hearing undertook to determine that relator was the regularly selected teacher of said school.

It appears from the record that on August 29th relator in company with Shelton went to the school house. Johnson was sitting on the steps with Albert Stephenson. A heated argument ensued. Likewise on the following Monday when school opened, Johnson was there to assume his duties but relator took charge and proceeded to teach the school. Johnson returned even after the first day of school but West was always there.

There seems to be no well founded objection to the legality of the contract entered into between Johnson and two of the trustees August 8th. The proposition that two of the trustees could not act because the third had not qualified, urged in brief without citation of authority, is not well taken. It is a general rule that a majority of any board or like governmental organization constitutes a quorum and may lawfully transact business, and this is true even though there may be a vacancy on the board, and regardless of whether such vacancy is brought about by death, resignation, failure to qualify or other cause. "A quorum is such a number of the officers or members of any body as is competent by law or constitution to transact business." Bouvier's Law Dictionary. Entertaining the view that the Johnson contract of August 8th is

valid, it is not necessary that we determine as to the legality of his purported contract with the board of education.

When relator entered upon the duties of teacher the first week in September, he did so with full knowledge that Johnson claimed to be the regularly chosen teacher for the Elkview School. Relator could not lawfully ignore Johnson's rights, nor can relator be held to have had a lawful contract with the trustees in the light of the two prior contracts of Johnson, the latter of which was certainly valid. There could be only one lawfully selected teacher for the Elkview School. When relator entered upon the discharge of the duties of teacher at Elkview over the protest of Johnson and of Stephenson, president of the board of education, he did so at his own risk. The action of the board of education on November 9th in holding that relator had superior claim over Johnson to the school was without binding effect. In support of his contention that such action of the board is binding and final, relator cites the case of *Hines* v. *Board of Education,* 49 W. Va. 426, wherein the Court quoted from Code, chapter 45, section 12, as it then was, as follows: "The trustees shall be under the supervision and control of the board of education, and in all cases the action of the trustees shall be subject to the revision and correction of the board of education, on the motion of any member thereof, or upon the complaint in writing of any three taxpayers in their sub-district." The Court then said: "Under this provision where the trustees get their business into trouble by indiscretions or otherwise, the board of education may come to the rescue and revise and correct their action, as in the present instance, the board on its own motion held a meeting for the purpose of ascertaining which appointment of teachers, if either, should be held valid." That holding is not authority now because the statute has been greatly changed. Section 53 of chapter 45 provides that a board of education may appoint three trustees for a sub-district but the above quoted provision of the old statute has been eliminated. The most that the statute now says on the subject of the control of trustees by boards of education is that "the trustees so appointed shall exercise the same right and authority over their respective sub-districts as is exercised by

the board of education when no trustees are appointed therein, but shall be subject to removal by the board of education at any time for neglect of duty or misconduct in office.''

The facts recited disclose that West is not in position to assert an undoubted legal right to the salary which he demands, nor can it be said that a plain duty rests upon the respondents to cause it to be paid. ''Clear legal right of the relator in mandamus to have performance of the act he seeks to coerce performance of, and plain duty to perform it, on the part of the respondent, are essential to the award of the writ.'' *Smith* v. *County Court*, 78 W. Va. 168. Where there is not plain legal right, the writ will not issue.

*Writ denied.*