W. E. MORTON, *Sheriff, et al. v.* EDGAR B. SIMS, *Auditor, et al.*

(No. 7802)

Submitted November 2, 1933.   Decided December 12, 1933.

*G. D. Herold,* for relators.

*Homer A. Holt,* Attorney General, and *Ira J. Partlow,* Assistant Attorney General, for respondents.

MAXWELL, PRESIDENT:

The sheriff, county court and board of education of Nicholas County seek by mandamus to compel the auditor of West Virginia to pay to said sheriff, *ex officio* treasurer of said county, the sum of $30,598.88, balance of $45,598.88 collected as taxes for the year 1932 of public utilities within said county. The amount collected was reduced to the said balance by a payment of $5,000.00 made by the auditor late in the year 1932 to the preceding sheriff of said county, and by a payment of $10,000.00 made this year to the present sheriff.

The auditor admits the said balance of $30,598.88 to the credit of Nicholas County, but says that he should not be required to pay the same because remittance has not been made to the auditor by the proper officials of Nicholas County for the sum of $23,223.46 collected for the state in said county by the sheriff in the year 1932. The said amount is made up of the following items: State funds $11,160.39; Virginia Debt $4,306.52; Capitol Building Fund $5,005.24; License Taxes $1,262.90; Circuit Court Fines $374.90; State Capitol Fund $513.51. In addition, the auditor asserts that Nicholas County is indebted to the state in the sum of $2,770.79 on account of incurables and other defectives from said county being cared for in state institutions, and that of the above named sum of $30,598.88 the auditor has applied $4,986.52 on the amount owing by magisterial districts of said county to the state sinking fund commission on account of utility taxes in said districts. These sums aggregate $30,962.77 which is $363.89 in excess of the amount which the relators seek to compel the auditor to pay under this proceeding.

In support of their position, relators place much reliance on the case of *Cook* v. *Lawson,* 110 W. Va. 258, 157 S. E. 589.

In that case, taxes which had been collected by the auditor from public utilities of Wyoming County for school purposes were required by this Court to be paid by the auditor to the sheriff of said county for said purposes through efforts had been made by the auditor to apply said funds to indebtedness owing by the county to the state sinking fund commission on account of road bonds which had been issued by certain magisterial districts of said county. Our decision was based on Code 1931, 11-8-12, which reads: "Any funds derived from levying of taxes under and pursuant to the provisions of this article shall be expended for the purposes for which levied and no other." We, of course, recognize the force of that statute now as we did in that case, but we desire to amplify the proposition as therein discussed. We think the statute quoted should be read in connection with Code 1931, 11-6-21, which deals with the subject of accounting by the auditor for taxes collected by him under levies against public service corporations, and reads:

> "When such taxes and levies are paid into the treasury as herein provided, the auditor shall account to the sheriff of each of the counties, to which any sum so paid in for county levies belongs, for the amount due such county, and may arrange the same with such sheriff in any settlement for state taxes in such a way as may be most convenient; and the sheriff shall account to the county court of his county for the amount so received by him, in the same manner as for other county levies. The amount so paid for each district and independent school district shall be added to the distributable share of the school fund payable to such district, and shall be paid upon the requisition of the county superintendent of free schools in like manner as other school moneys are paid."

This statute contemplates an accounting between the auditor and the sheriff. It does not provide for the payment beyond peradventure by the auditor to the sheriff of the full amount of a sum standing to the credit of a county on account of utility taxes collected by the auditor, but leaves the matter open for proper credits to be made. The word "account" as used in the said statute means a giving of proper consider-

ation to both debits and credits. An account is a reckoning or computation. Both sides of the ledger must be considered. In the *Cook* case, the statute now being discussed was not considered and presumably no injustice resulted therefrom, but if any of the road bond funds which were spent in Wyoming county instead of being paid to the sinking fund commission, were used for public school purposes, the amount so used would have been a proper credit against the amount which the auditor was required to pay to the sheriff on the theory that that sum had been collected for school purposes and could be used for no other. Such credit would have been proper because otherwise the Wyoming County school fund, if it received any portion of the road fund mentioned, profited to that extent at the expense of the state sinking fund commission.

The above mentioned sum of $45,598.88 collected by the auditor from Nicholas County utilities as taxes for 1932 was the result of county levies for different purposes. The following are the components: General county fund $6,109.19, county road fund $5,091.01, county agent $203.64, magisterial districts road fund $2,444.24, interest and sinking funds on account of road bonds of certain magisterial districts $4,968.56, public schools for the several magisterial districts $26,781.24, total $45,597.90. The record does not disclose in what manner the two items of $5,000.00 and $10,000.00, respectively, paid out of this sum by the auditor to the sheriffs of Nicholas County, were applied.

We are of opinion that in an accounting between the auditor and the sheriff the aforementioned sum of $2,770.79 owing by Nicholas County to the state on account of maintenance by the state in its various institutions of incurables and other defectives for Nicholas County, should be credited against the said sum of $6,109.19 collected by the auditor from utilities under the county levy for general purposes. We are also clearly of opinion that the auditor should have credit for the said sum of $4,968.52 collected for the benefit of sinking fund requirements and interest charges on certain district road bonds, and which said sum was paid by the auditor to the sinking fund commission. Allowing these credits, the book balance of the auditor in favor of Nicholas County is $22,-859.57. In reaching said book balance, the said two sums

of $2,770.79 and $4,968.52 have been credited on specific items of indebtedness of the auditor to the county as indicated, but the other two credits, aggregating $15,000.00, are merely deducted from the total indebtedness of the auditor to the county. The record does not contain information disclosing on what items of said indebtedness the said credits or any parts thereof were applied. This makes it impossible to determine the constituent elements or items of said balance .

But there is another difficulty even more serious. For what purposes did the Nicholas County authorities use the above mentioned aggregate of $23,223.46 of state funds which were collected by the Nicholas County sheriff for the several state purposes hereinabove specified? The record does not carry this information. Let us illustrate: if any of that money was used for general county purposes, the amount so used should be credited against any balance which the auditor may owe the county on account of utility taxes collected by him for general county purposes; if any of said funds was applied for school purposes, the auditor should have credit for such amount against the balance owing by him to the county upon taxes collected by him for county school purposes under school district levies; if any of said money was used for county or district road purposes, the auditor should have proper credit against the amounts owing by him under said items.

It is a familiar rule, trite from repeated statement, that before mandamus may issue, it must appear that the relator has clear legal right to the relief which he seeks and that there is plain legal duty on the part of the respondent to perform the duty which gives rise to the relator's right. *State ex rel. Smith* v. *County Court*, 78 W. Va. 168, 88 S. E. 662; *Thomas* v. *Compensation Com'r.*, 112 W. Va. 210, 164 S. E. 25. These requirements have not been met, and therefore there must be denial of the relief which the relators seek. Where the answer of the auditor as herein avers that the county authorities have used state funds, and such averment stands admitted by virtue of there being no denial thereof by the relators, the burden then devolves upon them of particularizing the applications that have been made of said funds. There are involved here matters of strict accounting. Local authorities may not apply state funds for their own purposes

and then require the state to pay to them the full measure of utility taxes collected for them, except upon a basis of proper accounting. Where local authorities have improperly used state funds, they must disclose ·just how they have used them so that the question of credits may be properly determined. If such information is not disclosed, full justice cannot be done and there is no basis for mandamus.

*Writ refused.*