J. MATT SMITH *v.* O. E. HOGAN *et al.*

(No. 8619)

Submitted May 5, 1937. Decided May 10, 1937.
(Opinion filed May 18, 1937)

Hatcher and Maxwell, Judges, dissenting.

*Walter L. Brown,* for relator.
*Goodykoontz & Slaven* and *Wade H. Bronson,* for respondents.

FOX, JUDGE:

Petitioner, J. Matt Smith, claims that he is the regular nominee of the Democratic party for the office of mayor of the City of Williamson, in an election to be held in said city on May 18, 1937; that J. R. Rutherford, Tom Chafin, J. R. Carr and B. H. Keesee are such nominees, in their respective wards of said city, for the office of members of the council; and he seeks a mandamus against the ballot commissioners of said city, and the council thereof, to require the placing on the Democratic ticket of the names of the said individuals as nominees for said offices.

The charter of the City of Williamson was granted by the Legislature of 1933, Regular Session, Chapter 136 of the Acts thereof, which was amended in certain sections by Chapter 139, Acts of the Legislature, Regular Session, 1935. The only portions of said charter, as amended, now under consideration are those which relate to the method of nominating candidates and holding the elections required thereunder. The original charter, sections 12 and 13, provides that at least thirty days before the time fixed for holding the first election thereunder, each of the two political parties casting the greatest number of votes in the last regular election held in such city, should cause a meeting of the members of said parties to be held at such time and place as should be fixed by the chairman of the executive committee of the county, and that at such meeting a city executive committee should be selected, to be composed of one man and one woman from each of the voting precincts, as well as a chairman, secretary and treasurer from the city at large, to be elected in addition to the two members from each precinct; that thereafter at each convention held in the city a new city committee should be selected; that the members of the committee, so selected by each of the parties, should hold office until the regular convention to be held for the purpose of nominating candidates for the offices of mayor and council; and that thereafter each member of such committee should hold office for a term of three years, with provision for appointment to fill vacancies for unexpired terms. The charter also provided that on the second Tuesday in April, 1934, and in each third year thereafter, each of said political parties should hold a convention for nominating a candidate for mayor and four candidates for the office of council, and notice was required of such convention by publication; that the executive committee of each party holding such convention should have authority to make such rules and regulations, governing the holding of such convention as it might deem proper, including all parliamentary rules and regulations governing the deliberations of such convention; that within five days after the holding of such

convention, the city executive committee, of each party, should cause to be furnished to the city clerk a list of persons nominated for the office of mayor and councilmen, such list to be duly sworn to and attested by the chairman and secretary of the city committee. It was provided that the first election should be held on the third Tuesday in May, 1934, and on the third Tuesday in May each third year thereafter. Under this charter, a city committee, chairman, secretary and treasurer thereof were selected, candidates for mayor and councilmen were nominated, and an election held in May, 1934. The validity of such action regarding the persons selected to hold the various positions and perform the functions thereof is not questioned.

By Chapter 139, Acts of the Legislature, Regular Session, 1935, sections 12 and 13, were amended and re-enacted. By the amendment to the charter, making the same apply to the election to be held in 1937, it was provided that the city executive committee of each of the two major political parties should be chosen at ward conventions and be composed of one man and one woman from each of the wards in said city, and hold office for a period of three years; that the committee should meet immediately after the adjournment of the city conventions of each of the political parties, nominating candidates for mayor, and organize by electing a chairman, a secretary and a treasurer from the city at large, and that the chairman so elected should be entitled to cast one vote, and that only in the event of a tie vote of the members of the committee; that the present members of the executive committee of said parties should continue in office until their successors should be elected as provided in the act.

It was also provided that candidates for each political party for member of the council should be nominated by mass conventions of the voters of the several wards; that on or before the second Tuesday in April, 1937, and on the same date in each third year thereafter, each political party should hold a mass convention in the several wards for the purpose of nominating a candidate for

councilman, selecting committee members from said wards, and selecting delegates to the city convention to nominate a candidate for mayor. Provision was made for notice prior to the ward conventions. It was provided that the male member of the executive committee, in each ward, should preside at such ward convention, until a permanent organization should be perfected; that in the event of the absence of the male member of the committee, the female member thereof should preside; that at least thirty-five days before every regular election, the city executive committee should designate the time and place for holding the city convention for the purpose of nominating a candidate for mayor, which should in no event be held less than twenty days before the election, and notice of which was also required; that the city executive committee should have authority to make such rules and regulations governing the holding of such convention as it might deem proper, including all parliamentary rules and regulations governing the deliberations thereof; that within five days after the holding of such convention, the city executive committee, of each party, should cause to be furnished to the city clerk a complete list of persons nominated, by their party, for the offices of mayor and councilmen, and required such list to be sworn to and attested by the chairman and secretary of the city executive committee. In both the original charter and the amendment thereto, it is provided that the city council should appoint three qualified voters of the city as commissioners of election for each voting precinct, requiring such appointments to be made from a list furnished by the city executive committee of the respective parties, when such a list should be filed, and there is this further provision:

"The city council shall have authority to provide all necessary and suitable means, equipment and appliances for the holding of such elections, and may adopt all necessary rules, ordinances, and regulations governing the same as may appear proper."

By an ordinance adopted by the council of the City

of Williamson on April 28, 1934, it was provided that the clerk of the city council, while holding such office, and two persons appointed by the council, one from each major political party, should constitute a board of ballot commissioners, of which the said clerk should be chairman; that the appointment of such ballot commissioners, other than the clerk, should be made upon the recommendation of the city executive committee of the two political parties; and that such ballot commissioners should be appointed on the fourth Tuesday in April preceding an election.

On March 19, 1937, the city executive committee of the Democratic party, assuming to act under its interpretation of the authority granted it under the charter, adopted resolutions relative to the holding of the mass conventions in the wards, as well as the city convention, providing as to the mass conventions, that the male member of the executive committee, if present, should call the convention to order and act as temporary chairman, the female member to so act in case the male member should, for any reason, be absent, and to continue to preside until a permanent organization should be effected; that all matters of procedure, including all parliamentary rules and regulations governing the convention, should be decided by the chairman, temporary or permanent, and that his decision thereon should be final; also that minutes of the convention should be kept and the same certified to the chairman of the city committee by both the temporary and permanent chairman of the mass conventions. As to the city convention, it was provided that the same should be called to order by the chairman of the city executive committee, who should act as temporary chairman until a permanent organization should be perfected; that minutes of the proceedings be kept and certified to the chairman of the then existing city executive committee; and further:

"In all the proceedings had by said convention, should any question arise as to any proceedings had at or any action taken by any ward mass meeting held in said city by the Demo-

cratic voters of such ward, a copy of the minutes of such ward mass meeting, signed by the permanent chairman thereof, shall be accepted by said convention as final with respect to any and all proceedings had, or action taken by, such ward mass meeting."

Later, on the 7th day of April, 1937, a short time before the convening of the city convention, the following additional resolution was adopted by the city executive committee:

"In case any contest or dispute arises as to any proceeding had at any Democratic mass convention in any ward in said city on the evening of April 6, 1937, any and all such shall be determined by the present chairman of this committee upon the credentials presented to him, and his decision thereon shall be final."

These are the statutes, ordinances and resolutions in existence at the time of the city convention, under which petitioner claims the nomination for mayor, and likewise, except as to the resolution last quoted, those in force governing the holding of the mass conventions at which members of the executive committee were selected, and candidates for members of the council nominated.

It appears that there are two contending factions in the Democratic party in the City of Williamson, one led by petitioner, J. Matt Smith, the other by the present mayor, O. E. Hogan, and for purposes of this case they will be designated as the Smith faction and the Hogan faction. The contest between them, engineered and carried out by determined men, bent on having their way, began prior to the holding of the mass conventions, in the several wards of the city. The calling of these conventions by the proper authorities, and the notice thereof, are not questioned. The dispute arises over what happened after the conventions were called to order. Each of the factions claims to have been largely in the majority, at each of the conventions, and each claims to have been entitled to select members of the city executive

committee, member of the council, and delegates to the city convention to nominate a candidate for mayor. More than two hundred affidavits have been filed by each of the factions, all strongly supporting the claims of those in whose behalf they are filed. It is impossible, from these affidavits, to make a decision as to the respective merits of the claims advanced by each of the factions, and we are not undertaking to do so. If, through the action of either of said factions, the will of the majority of the voters making up the Democratic party in Williamson has been thwarted, relief from such wrong is to be vindicated by the action of the people themselves in the election to be held in that city. We shall only discuss the controversy here presented from the standpoint of the legal rights of the parties.

Two sets of members of the executive committee were elected at each of the ward conventions, and two sets of delegates to the city convention were also selected, one representing the Smith faction and the other the Hogan faction. A candidate for member of council was nominated by each faction. The Smith selections were certified by the chairmen of the several ward conventions, who called those conventions to order in the first instance, and the delegates representing the Hogan faction were presented to the city convention by the person who presided at the mass conventions held by that faction. In the meantime, as stated above, the city committee had adopted a resolution, probably in anticipation of the dispute which afterwards arose, conferring upon the chairman of the city executive committee, who, under a former resolution, was authorized to call the convention to order, to pass upon the contending claims of the factions arising out of the mass conventions, and that his decision with respect thereto should be final. When the city convention was called to order by the chairman, and the lists of delegates were presented by the factions, he recognized the delegates selected by the Smith faction, and they proceeded to nominate petitioner, J. Matt Smith, as the Democratic candidate for mayor. The delegates representing the Hogan faction, claiming to represent the same party,

likewise proceeded to hold a convention, in the same room, during the same evening, and selected as their candidate for mayor, O. E. Hogan.

The result of this convention, as well as the result of the mass conventions in the wards, as interpreted by the Smith faction, was certified to the City Clerk, by the chairman and secretary of the city executive committee, and also by the chairman of the newly elected committee, on the theory that if any doubt existed as to which committee should certify such result, they would fortify against such question by having certification from both. The action of the Hogan faction, in the city convention, was also certified to the City Clerk by the chairman and secretary of the city executive committee representing that faction. The Hogan faction, being in control of the city council, ignored the recommendation of the city executive committee selected by the Smith faction, and appointed one of its adherents as a ballot commissioner. The board of ballot commissioners decided, as between the two factions, that Hogan, and the members of his faction nominated for councilmen, in the several wards, should be placed on the ballots as candidates for mayor and councilmen, respectively. The ballot commissioners did not act until after the award of the rule in this proceeding, but it seems to be admitted that the action of the ballot commissioners remains under the control of the court herein. The petitioner alleges that the nominees of the Hogan faction should not be placed on the Democratic ticket, and institutes this proceeding asking that a writ of mandamus issue requiring that he, and the nominees of his faction, be placed on the ticket as the regular nominees of the Democratic party for the several offices involved. The nominees of the Hogan faction have filed their answer, and on these pleadings, and the affidavits filed in support thereof, the case is submitted for decision.

We begin with the proposition that government must be maintained, and that, under our system, elections are necessary, at stated intervals. The legislature has always assumed to control elections by statutory provisions, but

formerly, it was the practice to leave nominations to rules and regulations of political parties and their committees. In recent years, however, it has undertaken, by statute, to regulate the holding of primaries and conventions, and has set up a more or less elaborate system of regulation governing the conduct thereof. This has been done with respect to the City of Williamson, the original charter providing in some degree for the selection of committees, and the nomination of candidates, all of which was extended by the amendment of the charter in 1935. By this latter enactment, the details of the method to be employed in selecting these committees and nominating candidates are greatly amplified. In view of the detail thus resorted to, we think great weight should be given to the action of the regular organization, set up by the respective parties, under this statute; and that in the absence of a showing of such fraud as would nullify any action taken by such organization, election thereunder of members of the committee, or the nomination of candidates, should be recognized as creating a legal right to the election or nomination resulting from such action. Political organizations have been known to abuse their power, but apparently there is no practical way of avoiding the vesting of some power in these organizations, and up to the present time, no way has been found to prevent the misuse of such power in all cases. It may be that the power vested in the Democratic organization, as represented by its city executive committee, was abused in this instance; but in view of the conflict developed by the various contentions and the affidavits filed in support thereof, we are unable to say whether the abuse of power is on the part of the city executive committee, controlled by the Smith faction, or by the city council, controlled by the Hogan faction. The important question seems to us to be which of the two organizations, namely, the city executive committee or the city council, has the power to create a legal right in those they select or nominate. We have come to the conclusion that the statute means to vest in the city executive committee the control of the conventions provided for therein, and that the action of

these conventions, called under the auspices of the city committee, resulting in the election of members of the committee, and the nomination of candidates, creates a legal right in the candidates thus elected and nominated, which must be recognized by those having control of making up the ballot. As we read the statute, no power is vested in the city council, either by direct action, or through the means of an ordinance providing for the appointment by it of ballot commissioners, to override the action of the conventions called under the auspices of the regular city executive committee. The power conferred upon the council with respect to elections seems to begin after the nominations are certified to the City Clerk, and cannot be extended to undo actions of the party organization leading up to such certification.

The functioning of the city executive committee, the legal existence of which at the beginning of the ward conventions, is not questioned, must mean something. The power vested in that committee cannot be taken away, and the effect of its actions nullified, by a person or a group of persons assuming to act independently thereof, to the extent of depriving the nominees of the regular convention of the legal right created by its action, in the absence of such showing of fraud as would justify a court or other tribunal in setting aside its actions for that reason. If the mere revolt of a percentage of any convention, however large that revolt may be, is to be held as destroying the legal right of the nominees of the convention called by the regular committee, then an important part of the power intended to be granted to these committees by the statute is nullified. We think the fact that Smith owes his nomination to delegates selected in mass conventions, as certified by the chairmen of those conventions designated by the statute to preside, furnishes basis for the legal right to the nomination which the regular city convention, made up of the delegates so selected, gave him. We base our conclusion entirely upon what we believe is the extent of the power which the statute vested in the city executive committee to initiate, control and certify the actions of the conventions therein

provided for, and the legal effect to be given thereto.

It is contended by the respondents that the chairman of the city convention, who assumed to preside as such, by virtue of being chairman of the city executive committee, was not entitled to preside. We do not think this contention tenable, because the statute expressly provides that the new committee shall meet and organize after the adjournment of the city convention, and necessarily the old chairman holds over until after the city convention ends. Another provision in the statute may seem to conflict with this construction, because it provides that the term of office of the old committee shall cease when their successors are selected, and those successors were selected at the mass conventions held on the day before the city convention convened. We do not think this point important, because in any event, the chairman of the committee being selected from the body of the electorate, of the respective parties, was entitled to hold over and exercise authority as chairman until his successor was selected, and that could only be done after the city convention adjourned.

Reference is made in the pleadings to the resolutions adopted by the city committee, conferring upon presiding officers of the conventions the power to decide certain questions, and providing that their decision thereon should be final. We do not approve of these resolutions, and consider them to be beyond the power which any committee has a right to confer upon any individual. A resolution which takes away from any convention, whether a mass convention or one composed of delegates, the power to control its actions is to be condemned; but we are unable to see where such resolutions were applied in this case to the extent that it can be said that if they had not been adopted, a different result would have occurred. It is true that in the city convention, the chairman of the city committee recognized the Smith delegates as entitled to sit in that convention, but as a practical matter, that question had to be decided by someone other than the delegates themselves, for the reason that in that convention, one set of delegates represented one faction,

and another set represented the other, neither entitled to vote upon their own case, and a hopeless deadlock would have resulted unless someone made the decision. If the Smith delegates were, in fact, entitled to sit in the convention, we may ignore the action of the chairman of the city convention in recognizing such right, and say that his decision in their favor was not necessary to give them the right to make the nomination, because their power to do so came not from such decision, but from the fact that they had been regularly certified by the officials of the mass conventions, and were therefore legally entitled to function as delegates.

There is, of course, ample authority for the proposition advanced by the respondents that "clear legal right of the relator in mandamus to have performance of the act he seeks to coerce performance of, and plain duty to perform it, on the part of the respondent, are essential to the award of the writ." *State ex rel. Smith* v. *County Court,* 78 W. Va. 168, 88 S. E. 662, 20 A. L. R. 1030. Many other decisions could be cited in support of this well recognized principle, and we would not be understood as departing from it in any sense whatever; but in adherence to this principle, we are not limited in the determination of what constitutes a clear legal right. The long and somewhat tedious statement of the terms of the statute, governing nominations for public offices in the City of Williamson, has been inserted to show the extent to which the legislature has gone in attempting to set up rules of conduct to be observed by committees and conventions in making these nominations, and we feel under obligation to give recognition to the action of any convention held thereunder. We are cited to the cases of *Marcum* v. *Ballot Commissioners,* 42 W. Va. 263, 26 S. E. 281, 36 L. R. A. 296; *State ex rel. Smith* v. *County Court, supra,* and *State* v. *Emmert,* 102 W. Va. 192, 135 S. E. 11. The holdings in all of these cases seem to us to uphold the right of political committees and conventions to act within the power vested in them, and to have their acts upheld as creating a legal right which the courts will not disturb. In the *Marcum* case, the action of the convention,

which contended for regularity was upheld, and the same is true in the case of *State* v. *Emmert*. In *Smith* v. *County Court*, the contest arose over a question that could only properly be decided by the committee itself, or some higher tribunal within the party. In the opinion, it was stated that the act, then under consideration, prescribed no rule or standard by which the courts could determine who constituted the committees, which was the very question upon which the controversy in that case depended. It was also stated that when members of the committees become elective under the statute prescribing qualifications, there will be such a standard created which will govern eligibility. In none of these cases was the action of the convention or the committee hedged about with statutory regulations. In the case under consideration, the legislature, in express terms, and in detail, has set up a rule of conduct to be observed by the city executive committee, and its members, not only in calling the various conventions, but the several steps necessary to the final election of members of the committee, and the nomination of candidates. We are of the opinion that, under no decision of this court, are we precluded from giving effect, in this case, to the action of the regular party organization, assuming to act within the power conferred upon it by statute.

The Smith delegates having been selected in a convention regularly called by the city committee, and being entitled to the advantage which that fact gave them, possess a legal right which can only be set aside by some attack, proper to be made, either by appeal to a higher court of the party or to a court of competent jurisdiction. We are not prepared to say that an appeal to a higher party court was open because there is no express authority for such a course. If there is no such right, we can only say, as has been said in other cases, that the parties feeling aggrieved must find the vindication of their claims in the action of the electorate to which all political disputes must, in the last resort, be submitted.

The writ will therefore issue.

*Writ awarded.*