STATE OF WEST VIRGINIA *ex rel.* J. NELSON HICKS *v.* SAMUEL LANGFORD, *etc.*

(No. 9110)

Submitted May 28, 1940.   Decided June 18, 1940.

*Clarence E. Martin, Jr.,* for relator.
*J. O. Henson,* for respondent.

RILEY, PRESIDENT:

In this original proceeding, the State of West Virginia at the relation of Nelson Hicks filed its petition praying for a peremptory writ of mandamus commanding the respondent, J. M. Langford, as recorder of the City of Martinsburg, to place the names of certain candidates on the ballot as Democratic nominees for mayor and councilmen of that city.

Relator is a resident, citizen, taxpayer, property owner and qualified voter of said city, and chairman of the city executive committee of the Democratic party. The petition alleges that under the provisions of the charter of the city the governing power is vested in a mayor, elected at large, and seven councilmen, each of whom is elected separately from the ward of his residence; that ward meetings were held on May 3, 1940, pursuant to call by the petitioner, as chairman; that the convention for the selection of a candidate for mayor was held on May 14, 1940, at which all the delegates selected at the ward meetings were present, "either in person or by duly authorized proxies"; that two of the nominees refused to accept and the city executive committee under Code, 3-4-23, named petitioner and one Brumbaugh in their stead; that petitioner, as committee chairman, certified the names of the candidates claimed to have been nominated at the ward meetings, except the two nominees who refused to accept, the candidate for mayor claimed to have been nominated at the mayoralty convention, and the petitioner and said Brumbaugh as councilmanic nominees; and that the respondent, as recorder, has refused to place the names of the persons so certified on the ballot for the municipal election to be held on June 11, 1940.

Section 16-(a), Article IX of the charter of the city, as enacted by Chapter 125 of the Acts of the West Virginia Legislature, Regular Session, 1933, reads as follows:

> "Primary elections shall not be held, but candidates for elective offices may be nominated by nominating conventions. Organized political parties, desiring to nominate candidates shall hold ward meetings on the call of the chairman of such party, not earlier than April fifteenth or later than May first before any city election, at some place designated in each ward, at which a candidate to represent such party for council from such ward in the ensuing election shall be chosen, together with the number of delegates to which the ward is entitled to a convention to choose the candidate of such party for mayor, which convention shall be held on the second Tuesday in May, preceding such election, at the hour and place designated by the chairman of such party. The chairman of such meetings and conventions shall certify to the recorder for placing upon the official ballot the candidate nominated thereat. The executive committee for each ward shall be selected in the same manner and at the same time the delegates to the mayoralty convention are chosen. Candidates shall not be nominated in any other way."

Notwithstanding the provisions of this section of the charter as to the time the ward meetings shall be held, they were actually had on the call of the petitioner as chairman of the Democratic city executive committee two days after the expiration of the time period specified by the charter.

At the outset of any election case the primary consideration is that no voter should knowingly be disfranchised. Thus, it has been held in the early history of this State that where the purposes and intent of a voter can be ascertained he will not be disfranchised for mistake or irregularities. *Loomis* v. *Jackson,* 6 W. Va. 613; *Dial* v. *Hollandsworth,* 39 W. Va. 1, 19 S. E. 557. And where a voter has no power over the officers, he will not be disfranchised

by the latters' blunder or mistake in the conduct of the election, if fairly held. *Morris* v. *Board of Canvassers of City of Charleston,* 49 W. Va. 251, 38 S. E. 500. In *State ex rel. Kirk* v. *Curry, Mayor,* 98 W. Va. 72, 126 S. E. 489, it has been held also that a writ of mandamus will issue to command the holding of a municipal election, though the responsible officers of the municipality had failed to call the same on the day prescribed by statute. Accord: *Bannister* v. *Town of Glasgow,* 117 W. Va. 172, 185 S. E. 2; *State ex rel. Lornetz* v. *Pierson, Mayor,* 86 W. Va. 533, pt. 3, Syl., 103 S. E. 671; *State ex rel. Heironimus* v. *Town of Davis,* 76 W. Va. 587, 85 S. E. 779. There is no difference in principle between cases involving elections and the case here, where nominations are to be made by ward meetings and a convention, with the possible exception, not necessary to decide now, that greater strictness should be required in the case of elections which are final, than in primaries or conventions which determine nominations only. *A fortiori,* if a convention for the purpose of making nominations is valid, the writ should issue to compel the placing of the names of the nominees on the ballot, and such has been the recent holding of this Court in the case of *Smith* v. *Hogan,* 118 W. Va. 658, 191 S. E. 535. See also *Marcum* v. *Ballot Commissioners,* 42 W. Va. 263, 26 S. E. 281, 36 L. R. A. 296.

It seems to us that where conventions, or mass meetings, as in the instant case, were duly and regularly called, except that the statutory provision as to time had not been complied with and the record discloses that the failure of compliance was of no great moment and due to an innocent mistake, and there is no evidence of fraud, corrupt motives, or prejudice to any voter, the proceeding should be upheld. There is substantial authority to the effect that a court in the exercise of its discretion may refuse to uphold an attack upon the validity of an election because it was held on a day different from that fixed by law, where there is no fraud, prejudice or other irregularity. *Rainwater* v. *State of Alabama ex rel. Strickland,* 237 Ala. 482, 187 So. 484, 121 A. L. R. 981, and notes pages 987-993.

See, generally, 18 Am. Jur., subject Elections, section 112, note 20, and authorities cited thereunder.

Under the circumstances, we think that the instant nominations should be upheld, otherwise a substantial part of the electorate of Martinsburg would be disfranchised because of an innocent mistake of a public official over whom the voters had no control. Surely, the legislature did not intend such a result, and, though Code, 3-4-23, vests in the executive committee of a political party the power to place names on the ballot, if there was a failure to nominate in the first instance, this provision of the statute should not, in our opinion, be construed to vest in a committee such power where its exercise became necessary only because of the committee's own dereliction. If that were the case, the whole purpose of the statute could be abrogated and a committee by failing to perform its duty could draw unto itself the power to substitute its will for that of the voters which, under the instant charter, can and should be asserted only through ward meetings and the mayoralty convention.

This case is to be distinguished from the case of *Lorentz* v. *Pierson, supra,* in which this Court held that an election at a time different from that fixed by law is void, unless its holding at a different date is compelled by a court of competent jurisdiction. There both relator and respondent regarded the belated election as abortive and a nullity, and the record does not disclose, as it does in the instant case, that the failure to comply with the statute as to the time provision was the result of an innocent mistake of a public official over whom the voters had no control. In that case this Court said: "To allow those charged with the execution of election laws to change the time for holding elections to suit the convenience or interest of themselves or their friends would result in fraud and injustice to such an extent that the title of every officer would be brought into disrepute." True, but the instant case involves an innocent mistake and clearly should be distinguished. Pt. 2 of the syllabus of the *Lorentz* case should be qualified by the exception herein stated.

Confined to the circumstances of this case, the time provision should be construed as directory and not mandatory, notwithstanding the statute provides that the nominations shall not be made in any other way. This latter provision of the statute simply means that nominations shall be made by conventions called in the manner prescribed by statute, and that no nominations shall be made either by primary election or in any other way.

The allegations of the petition to the effect that all of the delegates to the mayoralty convention were present in person or by proxy, is not controlling. The petition alleges that the nominee for mayor was duly and regularly nominated and nowhere in either the petition or answer does it appear that a quorum of duly selected delegates was not actually present. If, in fact, such a quorum was not present, the point surely could and should have been raised in respondent's answer.

The selection of the petitioner and Brumbaugh by the Democratic city executive committee to fill the vacancies caused by the failure of two of the nominees to accept nominations was regular under Code, 3-4-23.

For the foregoing reasons, an order has been entered issuing the peremptory writ of mandamus.

*Peremptory writ awarded.*

KENNA, JUDGE, dissenting:

Placing the judiciary in a position where it is the final judge of whether an election not held at the time fixed by statute is valid because it is a good faith departure from the statutory requirements, or is void for the reason that it is done for a fraudulent purpose, I believe is a dangerous departure from a simple and definitely established rule. I quote an accurate statement from the *Lorentz* opinion:

> "It is held with practical unanimity that where a particular time is fixed by law for the holding of an election the body charged with executing such law may not fix a different date therefor. If such election is held on another day than that

fixed by law, it will be void. 9 R. C. L. Title 'Elections', sec. 19; 15 Cyc. 341. To allow those charged with the execution of the election laws to change the time for holding elections to suit the convenience or interest of themselves or their friends results in fraud and injustice to such an extent that the title of every officer would be brought into disrepute. If the officers charged with the duty of holding an election at a particular time, fail to discharge that duty, the only remedy is to appeal to the courts to compel its performance by the writ of mandamus. *State ex rel. Heironimus* v. *The Town of Davis,* 76 W. Va. 587, 85 S. E. 779."

An examination of the authorities cited to sustain an according text statement in 18 Am. Jur., "Elections" par. 112, will demonstrate that statutes fixing dates upon which elections are held are regarded as mandatory and that the rule is free from complications. The same rule, of course, governs the holding of conventions.

The *Lorentz* decision suggests mandamus as an appropriate remedy, but so far as the failure to conform with the statutory requirements for the purpose of making nominations is concerned the appropriate executive committees of the major parties are vested with the necessary authority to assure their party members representation on the ballot. (Code, 3-4-23.) With the courts open to require an executive committee to exercise and perform a required function, I cannot become alarmed at the possibility of disfranchising voters of the parties that select the executive committees vested with power to act. The city executive committee could have adopted the selections of irregular mass conventions and could have properly certified their names to be placed upon the ballot, had it so desired.

I would decline to issue the writ.