STATE *ex rel.* CHAPMAN REVERCOMB *v.* W. H. SIZEMORE
*et al., etc.*

(No. 9402)

Submitted September 15, 1942. Decided September 29, 1942.

*Lee, Blessing & Steed* and *E. G. Pierson,* for petitioner. *Eakle & Eakle, Henry McLane* and *Randolph Bias,* for respondents.

LOVINS, JUDGE:

Relator filed his original petition in mandamus seeking a writ requiring the County Court of Clay County, as *ex officio* canvassing board of such county, to reassemble and rescind an order entered on August 21, 1942, rejecting the entire vote cast in seven precincts in Clay County in the primary election of August 4, 1942, and in lieu thereof to include such vote in its certification of the result of said election, in Clay County.

The names of relator, respondent, Raymond J. Funk-houser, and John L. Gillespie appeared on the Republican party ballot as candidates for the nomination for the office of United States Senator, in the aforesaid primary election. The canvassing board of Clay County held a recount upon the demand of Funkhouser and, on August 12, 1942, upon completion thereof entered an order declaring that in Clay County Revercomb had received five hundred ninety-one votes, Funkhouser, one hundred twenty, and Gillespie, eighty-eight. Funkhouser thereupon objected to the count-ing of any votes in Precincts Nos. 6, 14, 15, 17, 18, 31 and 37, because of certain irregularities disclosed by the records of those precincts and revealed during the recount, and moved the board to reject such votes. Revercomb then moved the board to summon the election officers from the said precincts for examination before the board.

From the testimony of the election officers summoned and the exhibits with the record, it appears that the ir-regularities and omissions upon which the Funkhouser motion was based relate to the oath of the election officers and the affidavit of such officers showing that they had been sworn as required by statute. Summarized, these irregularities include the following:

(a) In some instances a poll clerk administered the pre-scribed oath (Code, 3-4-16) for election officers, although poll clerks are not authorized to perform such a function.

(b) Regarding the affidavit of the election officers, it appears that in some precincts the name of the affiant was not properly subscribed in the space provided therefor, though affiant's name did appear in the body of the affi-davit; in other instances, the person who administered the oath failed to sign the jurat; and in still other instances the name of affiant was improperly inserted in the oath form.

It appears, however, that all election officers in the seven precincts took the oath prescribed by statute, before some-one believed to be possessed of authority to administer the same.

On the 21st of August, the board sustained the motion

made by Funkhouser to reject the entire vote in the seven precincts questioned.

The effect of this action of the board is that relator lost 119 votes and respondent Funkhouser 14 votes in Clay County.

The petition herein alleges that the objection raised by Funkhouser does not charge that the election officers did not properly discharge their duties, or that there was fraud or misconduct at any of the seven precincts, or that the free will of the voters was not exercised, and asserts that the irregularities complained of cannot vitiate the election or give cause for the discard of the vote cast, in the absence of such charges.

Respondents' demurrer to the petition assigns as its sole ground that the petition does not allege that relator will be benefited by the award of the writ, or that he will be prejudiced by a denial thereof, based upon the argument that mere personal satisfaction of a candidate in knowing that he has received more votes than an opponent, unless the result of the election is changed, will not afford a basis for award of the relief sought. Respondents' answer, briefly, asserts that Code, 3-5-11, is mandatory in its requirement that the officers be sworn, and since the record shows that all of the election officers at the seven precincts were not under oath properly to discharge their duties, they could not receive votes or conduct elections, and that if unsworn officers are permitted to act, misconduct and fraud are invited.

Relator's demurrer to the joint answer points out that the irregularities mentioned do not constitute grounds for the rejection of votes cast, in the absence of evidence of fraud resulting therefrom, or that such irregularities were for the purpose of perpetrating fraud upon the voters; also, that Code, 3-5-11, is not mandatory in the sense that failure of election officers to observe the same will vitiate the election after the same has been conducted.

Non-compliance with the statute requiring the oath of the election officers, even if the same is mandatory, will not vitiate an election in the absence of fraud or miscon-

duct. In view of the fact that the election here involved was a primary election, the statutory provision requiring the election officers to take and subscribe to the prescribed oath is found in Section 16, Article 4, Chapter 3, and not Code, 3-5-11, as suggested by relator and respondents. The latter section, in our opinion, applies only to general elections. Section 16 referred to, requires commissioners and poll clerks to "take and subscribe" separate prescribed oaths before entering upon the discharge of their duties. The section further provides that such oaths may be taken before anyone authorized to administer oaths or before one of the commissioners if no such person be present at the place where the election is being held. As above indicated, no authority is vested in poll clerks for the administration of the oath. Under general rules of statutory construction, the fact that Section 16 provides that the poll clerks and commissioners "shall" take and subscribe the prescribed oath before entering upon their duties, indicates that the same is mandatory in its requirements; however, it does not necessarily follow that an election should be vitiated wherein irregularities appear as in this case. The votes cast in the seven questioned precincts were fairly and correctly counted and tabulated upon the recount and no fraud or misconduct has been shown. To exclude such returns from the canvass of the vote cast in said election in Clay County would, in effect, disfranchise the voters in such precincts, solely because of the participation of election officers, some of whom were not properly sworn and others who did not properly subscribe to the oath taken. "It has been held in the early history of this State that where the purposes and intent of a voter can be ascertained he will not be disfranchised for mistake or irregularities." *State* v. *Langford,* 122 W. Va. 398, 9 S. E. 2d 865, 866, and cases cited therein. We do not believe that an election should be vitiated by reason of the fact that election officers acted, under color of authority, without the required qualifications as to taking and subscribing the statutory oath, where no fraud or misconduct is imputed. *Bell* v. *Faulkner* (Tex), 19 S. W. 840; *Clark* v. *Man-*

*hattan Beach,* 175 Cal. 637, 166 P. 806, 1 A. L. R. 1542; *Quinn v. Markoe,* 37 Minn. 439, 35 N. W. 263; *People v. Avery,* 102 Mich. 572, 61 N. W. 4; *People v. Graham,* 267 Ill. 426, 108 N. E. 699, Ann. Cas. 1916C, 391; *Town of Hendersonville v. Jordan,* 150 N. C. 35, 63 S. E. 167; *Mosiman v. Weber,* 107 Neb. 737, 187 N. W. 109; 20 C. J. pp. 89, 90, Sec. 69; 9 R. C. L. 1012, Sec. 32, 33; *Browning v. Gray,* 137 Tenn. 70, 191 S. W. 525; *Barham v. Denison,* 159 Tenn. 226, 17 S. W. 2d 692.

It necessarily follows that the board of canvassers was without authority to reject the vote in the seven precincts heretofore referred to because of the irregularities complained of, and that such board should have included in the canvass of returns for the entire county the results in said precincts as ascertained in the recount of August 12, 1942.

A canvassing board will be reconvened by a writ of mandamus and compelled to correct any errors it may have committed in attempting to perform its duties. Code, 3-5-41; *State v. Heatherly,* 96 W. Va. 685, 123 S. E. 795. Respondents assert that without an allegation or a showing that the result of the election will be changed to the extent that relator will be deprived of the nomination sought that it would be a vain and futile thing to award the writ. We have held many times that such a showing is necessary. *Ice v. Board,* 64 W. Va. 544, 63 S. E. 331; *State ex rel. Johnson v. Given,* 102 W. Va. 703, 136 S. E. 772; *Hatfield v. County Court,* 113 W. Va. 271, 167 S. E. 618; *Lucas v. Board,* 116 W. Va. 427, 181 S. E. 77; *Taylor v. Board,* 119 W. Va. 378, 382, 193 S. E. 575. This principle is firmly established by the cases cited, however, in each instance a county or district office was involved. We must recognize the futility, if not the impossibility, of attempting to make an allegation of the nature insisted upon by respondents where a state-wide election is involved, especially where, as in this case, the petition shows that recounts are pending in several counties. The distinction between a state-wide election and a county or district election must be recognized because it would be useless to insist upon an allegation which goes merely to the form and not to the substance

of the matters sought to be established. Where fifty-five counties are involved and recounts pending, as in this case, how could relator successfully urge that he will lose the nomination unless he is given the relief sought by his petition?

For the reasons assigned the writ, as prayed for, is awarded.

*Writ awarded.*