# CHARLESTON.

STATE ex rel. HIRAM SIZEMORE v. W. L. HUNTER et als.
STATE ex rel. F. E. SHANNON v. W. L. HUNTER et als.
STATE ex rel. JAMES P. COOPER v. W. L. HUNTER et als.

Submitted July 6, 1920.    Decided July 8, 1920.

ELECTIONS—*Power of County Board Sitting as Board of Canvassers Stated.*

The county court sitting as a board of canvassers of the returns of a primary election have no authority or jurisdiction on the demand of a candidate voted for at such an election for a recount of the ballots cast at the several voting precincts, to exclude such ballots upon the ground that the affirmation books required by section 13 of the Primary Election Law were not signed by the voters as required by said statute. Such affirmation books constitute no part of the returns of said election to be canvassed or considered by such canvassing board. The sole jurisdiction of such board is to canvass the returns which the law requires election officers to make to them and to declare the result as shown on the face thereof.

(WILLIAMS, PRESIDENT, absent).

Separate proceedings in mandamus by the State, on the relation of Hiram Sizemore, F. E. Shannon and James P. Cooper,

against W. L. Hunter and others, to compel the issuance of election certificates.

*Writs awarded.*

*Geo. W. McClintic,* for relators.

*John R. Pendleton,* for respondents.

MILLER, JUDGE:

The relators, candidates on the Republican ticket at the primary election held in Wyoming County on May 25, 1920, for the nomination for the offices of sheriff, prosecuting attorney and county assessor respectively, and on the face of the returns made by the election officers at the several precincts of said county duly nominated for said offices, seek by mandamus to compel respondents, members of the county court of said county, and ex officio the board of canvassers of said returns, to reconvene forthwith as such board of canvassers and issue to petitioners respectively certificates, in the case of petitioner Hiram Sizemore showing that on the face of the returns he received for the said office of sheriff eight hundred and nineteen (819) votes as against seven hundred and eighty-five (785) votes for his only competitor, respondent A. E. Weaver; and in the case of said F. E. Shannon, showing that he received on the face of said returns for the office of prosecuting attorney for said county nine hundred and thirteen (913) votes as against six hundred and thirteen (613) votes cast for respondent J. Albert Toler, his competitor for that office; and in the case of relator James A. Cooper, that he received on the face of the returns for the office of county assessor seven hundred and seventy-one (771) votes, and that respondent G. W. Graham, his competitor for said office, received only five hundred and seventy-seven (577) votes.

The several petitions made parts of the alternative writs and the returns of respondents show that after having first met on May 28, 1920, and after several adjournments, lastly on June 9, 1920, said board of canvassers did canvass the returns of said election, and as to the nominations for said offices did ascertain that on the face thereof the result in each instance was as claimed by relators; but that on said last mentioned day, after having so ascertained and recorded the result of said election, on demand solely of said respondent Weaver, candidate for the

nomination for the office of sheriff, for a recount of the ballots of certain precincts in said county, and after such recount had been made, said canvassing board on motion of said Weaver undertook to exclude the votes cast at some of said precincts, the basis of said motion and of its action being that at said precincts the voters had failed to sign the affirmation books as required by section 13 of the Primary Election Law as amended in 1919; and that at a session of said board of canvassers held on June 14, 1920, to which day by an alleged nunc pro tunc order then entered said board of canvassers pretended to have adjourned, they proceeded to consider said motion and objections, and after excluding the ballots from said several precincts ascertained that for the office of sheriff said Sizemore received but four hundred and eight (408) votes and the said Weaver four hundred and eighty-five (485) votes, resulting in the nomination of the latter instead of the former as shown on the face of the returns; and in the case of said Shannon that he received but four hundred and thirteen (413) votes and his competitor, respondent Toler, four hundred and thirty-one (431) votes, changing the result of said election in favor of the latter; and in the case of petitioner Cooper, instead of the result on the face of the returns, that he received only three hundred and fifty-nine (359) votes, and his competitor Graham four hundred and sixteen (416) votes, thereby giving the said Graham the nomination by a majority of fifty-seven (57) votes over relator.

The present writs challenge the authority and jurisdiction of said canvassing board, on the demand of a candidate for a recount, to exclude the ballots cast at any precinct at such primary election, or to take into consideration in canvassing the vote any facts except such as appear on the face of the returns made to them by the election officers. Wherefore the sole question presented for decision is, were the affimation books required by section 13 of the Primary Election Law a part of the returns to which respondents could look in determining and declaring the result of said primary election? Nowhere in said Primary Election Law do we find any prescribed authority in the election officers holding such elections to exclude ballots because of the omission of voters to sign the affirmation books.

Illegal votes after the ballots are cast must be counted, though they may afterwards be made the subject of contest in contests properly instituted. *Doll* v. *Bender,* 55 W. Va. 404, 410. Section 68 of chapter 3 of the Code, the general election law, made applicable to primary elections, in prescribing what is to be included in such returns and considered by the canvassing board, says, "The officers in whose custody the ballots, poll books, tally-sheets and certificates have been placed, shall lay the same before them for examination." Section 24 of the Primary Election Law makes all provisions of said chapter 3, the general election law, not in conflict with it, so far as germane, applicable to primary elections. In prescribing the disposition to be made of said affirmation books by the election officers, section 13 of the Primary Election Law says: "Said affirmation book, together with all written affidavits made at said primary, shall be placed in a strong and durable envelope and securely sealed by the commissioners of election, and each commissioner shall write his name across the back of such envelope, which shall be delivered by one of the commissioners to the clerk of the circuit court, who shall preserve said affirmation book in his office, and deliver the affidavits to the foreman of the grand jury when next in session, as provided by section eighty-three of chapter three of the Code." There is no provision anywhere for laying these affirmation books before the canvassing board, nor for making them a part of the official returns to be canvassed. Having served their purpose before the election officers, they are required to be sealed up and returned to the clerk of the circuit court and by him preserved for lawful purposes, which does not include the canvassing of the votes by the board of canvassers. And said section 83 of chapter 3, the general election law, requires that all affidavits provided for in this chapter shall be delivered to the foreman of the grand jury with the seal of the election commissioners unbroken. In *Brazie* v. *Fayette County Commissioners,* 25 W. Va. 213, it was decided with reference to canvassing boards, that the acts of the county commissioners must be based on the returns as certified to them from the several voting places of the county; that the provisions of the statute relating to contested elections have no application to their duties as canvassers of the election. In the present case,

as already observed, the board of canvassers undertook, on the demand of one of the candidates affected for a recount of certain precincts, to throw out and disregard the whole vote in these precincts without notice of contest or otherwise to the other candidates affected, thereby to change the whole result of said election, not only as to the candidate demanding the recount, but as to all other candidates for nomination for county offices. This action was clearly unlawful. In primary elections the purpose of the affirmation book is to qualify the voter to cast his ballot for the candidates of a particular political party. He may qualify therefor in the several ways prescribed by the statute. But as we decided in *Sanders* v. *Board of Canvassers,* 79 W. Va. 303, the board of canvassers can not determine the qualifications of voters, or any such question. They simply ascertain and declare results according to the returns made to them. There is a marked distinction in our cases, and in the statute, as to what may be considered by a canvassing board and by the court or other tribunal in a contested election.

But an argument is presented, based on the particular provisions of section 14 of the Primary Election Law and our case of *Baer* v. *Gore,* 79 W. Va. 50, that the proceeding before the board of canvassers, as in *Baer* v. *Gore,* was converted into an actual contest, and that the rules applicable to contested elections are controlling. Certainly these rules could not be applied in the cases of Cooper and Shannon, who had no notice, were not parties to that proceeding, and whose rights and interests were disposed of without a day in court. In *Baer* v. *Gore* the proceedings were converted into a contest by the action of the parties, and what is there decided must be construed with reference to the fact that that was a contested election. That fact is emphasized in the opinion. True, as argued, section 22 of the Primary Election Law provides for appeals by candidates from the action of the board of canvassers or of any political committee to the circuit court and to this court, and says that: "All such *contests* shall be governed by the provisions of the code of West Virginia, so far as the same are applicable, as found in chapter six thereof." But how can it be argued that this provision, unless as in *Baer* v. *Gore,* the case is converted into a contest, enlarges the powers and duties of the

board of canvassers, and gives that board jurisdiction to determine the legality of votes cast at such primary election. Such was certainly not the intention of the Legislature manifested by any provision of any of the statutes bearing on the subject.

From all which, our conclusion is that peremptory writs should go in each case according to the mandates of the original writs, and it will be so ordered.                    *Writ awarded.*