STATE *ex rel.* WAYNE THOMPSON, *et al.*

*v.*

S. P. FRY, *et al.*, MEMBERS OF THE COUNTY COURT OF WAYNE COUNTY, *Etc.*

(No. 10492)

Submitted May 27, 1952.   Decided June 24, 1952.

Lovins, Judge, dissenting.

Fox, Judge, not participating.

*J. Floyd Harrison, William B. Hogg,* for relators.

*Okey P. Keadle, Paul W. McCreight,* for respondents.

Haymond, Judge:

This is an original proceeding in mandamus in which the petitioners, Wayne Thompson, Lillian Porter, Cullie

Finley, Ray Hardwick and Cecil Pauley who, being duly selected, served as election officers at the primary election held on May 13, 1952, in Precinct No. 31, known as Effie Precinct, in Lincoln District, Wayne County, West Virginia, seek a writ to compel the defendants, S. P. Fry, Oscar Watts and W. Frank Harrison, members of the county court and as such ex-officio members of the board of canvassers, and App Queen, clerk of the county court, of that county, to deliver into the custody of the petitioners the ballot boxes containing the uncounted ballots and all the other papers and records used in connection with the primary election in Precinct No. 31, for the purpose of enabling the petitioners to count such ballots, tabulate the votes cast for the various offices, and certify the result of such election in that precinct in the manner provided by law.

Upon the petition filed by the petitioners on May 22, 1952, this Court issued a rule returnable May 27, 1952, and on that day the defendants filed their answer to the petition. At the same time, Clifford Hatten, a candidate for the Democratic nomination for the office of sheriff of Wayne County, filed his petition in which he prayed that he be permitted to intervene and be made a defendant; and this proceeding was submitted for decision upon the foregoing pleadings, the oral argument in behalf of the petitioner, Clifford Hatten, and the written briefs respectively filed in behalf of the petitioners and the defendants.

On May 29, 1952, this Court, by order, refused to permit the petitioner, Clifford Hatten, to intervene and be made a defendant in this proceeding, dismissed his petition without prejudice, awarded a writ of mandamus commanding the defendants to deliver into the custody of the petitioners the ballot boxes containing all the ballots and the other necessary election material and papers used in connection with the holding of the primary election in Precinct No. 31, in Wayne County, on May 13, 1952, for the purpose of enabling them to count the ballots, tabulate the votes for the respective offices, and certify the result of the primary election in that precinct without delay in

the manner provided by law, and directed the petitioners to perform the foregoing acts in private at the polling place originally provided in Precinct No. 31 for holding the election and, after performing those acts, to return all ballots, certificates of the result, and the other necessary election material, records and papers, used in holding the election in that precinct, to the persons respectively designated by law to receive them.

This opinion is now filed for the purpose of stating the reasons which caused this Court to dismiss the petition of Clifford Hatten to intervene as a defendant and to grant the writ.

More than three hundred ballots were cast in Precinct No. 31 on May 13, 1952, but no counting board was provided by the county court for that precinct. After the polls were closed the petitioners, entertaining the mistaken view that the ballots should have been counted by a counting board or other officials, decided not to count the ballots, and did not count them. The petitioners then deposited all the ballots and the other necessary election material and papers in the ballot boxes, securely locked them, and one of the petitioners took the ballot boxes to the office of the clerk of the county court of Wayne County and delivered them to the defendant, App Queen, clerk of the county court, and obtained a receipt for them from him.

On May 16, 1952, the defendants S. P. Fry, Oscar Watts and W. Frank Harrison, members of the county court, convened as a board of canvassers to canvass the returns of the primary election in Wayne County and on that day summoned the petitioners to appear before the county court on May 19, 1952, for the purpose of counting the ballots and certifying the result of the primary election in Precinct No. 31. When the petitioners appeared before the board of canvassers they requested the board of canvassers, which apparently then had control of the ballot boxes containing the ballots and the other election records, to return them to the petitioners who at that time

offered to take them to the polling place in Precinct No. 31 and there count the ballots, tabulate the votes and certify the result of the election. The board of canvassers refused this request but offered to permit the petitioners to count the ballots, tabulate the votes, and prepare certificates of the result of the election in some room in the courthouse of Wayne County if the petitioners would permit the members of the board of canvassers to participate in such proceedings.

At this stage of the discussions between the petitioners and the members of the board of canvassers the petitioners offered to count the ballots and certify the result of the election privately in some room of the courthouse but the members of the board of canvassers and certain candidates for nomination for various offices, who were also then present, refused to consent to that proposal.

After delivering the ballot boxes and their contents to the clerk of the county court at his office, the petitioners consulted counsel who informed them of their error in failing to count the ballots, tabulate the votes, and certify the result of the election, and they allege in their petition that they are now willing to perform those acts without delay and that they seek and desire to obtain possession of the ballot boxes and their contents solely for that purpose.

On May 20, 1952, the defendants S. P. Fry, Oscar Watts, and W. Frank Harrison, members of the board of canvassers, being of the opinion that the petitioners, in failing and refusing to count the ballots and certify the result of the primary election in Precinct No. 31, had vacated and abandoned their offices, by order entered on that day declared those offices to be vacant, stated that it was their duty, upon the canvass, to ascertain the result of the primary election in that precinct, and expressed their intention, at the conclusion of the canvass of the other precincts of the county, in open court and in the presence of all interested candidates, to open the ballot boxes, to count the ballots cast at Precinct No. 31, and to ascertain the result of the primary election in that precinct. The board

of canvassers, in the same order, postponed any action on its part in counting the ballots until May 27, 1952, to afford an opportunity to any person, who desired to challenge its ruling to count the ballots at that time, to apply to a court of competent jurisdiction for that purpose, required the ballots cast in Precinct No. 31 to be kept in the locked ballot boxes under constant guard by the clerk, and appointed two persons to guard the ballot boxes, containing the ballots and the other election records and papers, under the supervision of the clerk.

The ballot boxes, containing the ballots and the other necessary election material, records and papers used in the primary election in Precinct No. 31, have remained locked and unopened since they were delivered to the clerk of the county court by one of the petitioners, and the ballot boxes and their contents, continuously since so delivered, have remained in that condition and have been and now are in the custody of the defendant, App Queen, clerk of the county court, subject to the direction and the control of the defendants, S. P. Fry, Oscar Watts and W. Frank Harrison, members of the county court and as such ex-officio members of the board of canvassers of Wayne County, all of whom refuse to deliver them and their contents to the petitioners for the purpose of enabling them to count the ballots, tabulate the votes, and certify the result of the election in Precinct No. 31.

In their answer the defendants charge that the petitioners violated their duties as public officials and were guilty of unlawful conduct in failing to count the ballots and certify the result of the election in the precinct in which the petitioners acted as election officers; but, with this exception, neither the petitioners nor the defendants accuse any of the respective parties to this proceeding of any fraudulent or dishonest conduct in connection with the primary election or the disposition of the ballots and the other necessary election material, records and papers; and both the petitioners and the defendants assert that each of the respective parties is acting honestly and in

good faith in the dispute between them concerning the matters involved in this controversy.

The petitioner, Clifford Hatten, a candidate for the democratic nomination for the office of sheriff of Wayne County, seeking permission to intervene as defendant in this proceeding, alleges in his petition that, according to the canvass of the returns of all the precincts in the county for the primary election held on May 13, 1952, except Precinct No. 31, he has received more votes for the nomination for which he is a candidate than any of his opponents by a margin of 42 votes over his closest opponent; that the petitioners as election officers in Precinct No. 31 failed to tabulate the results of the primary election, to file certificates of the result of the election, and to seal the ballots voted in the election in envelopes bearing the signatures of the commissioners; that they left the ballots in the ballot boxes without placing them in any sealed or unsealed envelopes; that after the polls in Precinct No. 31 were closed on May 13, 1952, the petitioners placed the ballot boxes and their contents and the keys to the ballot boxes in the custody of one of their members for delivery to the clerk of the county court; and that the petitioner to whom the ballot boxes and their contents and the keys were delivered took them from the voting place in Precinct No. 31 unaccompanied by any other election officers. He prays that he be permitted to intervene in this proceeding as a defendant and that the writ of mandamus sought by the petitioners be denied. His counsel in oral argument insists that the foregoing acts of the petitioners destroyed the integrity of the ballots cast in Precinct No. 31, and that none of them can be counted or given any force or effect.

The material facts, as disclosed by the pleadings, are not disputed and the questions presented are questions of law.

A preliminary question, presented by the petitioner, Clifford Hatten, which must first be considered and determined, is whether, under the facts alleged in his peti-

tion, he is entitled to intervene as a defendant in this proceeding.

It is clear, from the allegations of his petition, that the petitioner, Clifford Hatten, is under no legal duty or obligation to perform any of the acts sought to be enforced against the defendants in this proceeding. No legal duty or obligation rests upon him, as a candidate or otherwise, to perform any official act in connection with the lawful possession of the ballot boxes, the ballots, or the other necessary election material, records and papers used in holding the primary election, the count of the ballots, the tabulation of the votes, or the certification of the result of the election. He may not lawfully have possession of any of the foregoing election material or participate in any manner in ascertaining the result of the primary election in which he was a candidate and, of course, he can not be compelled by mandamus to perform any act of that character. It is equally clear that no substantial right or interest of the petitioner, Clifford Hatten, is involved in the subject matter of this controversy between the petitioners and the defendants and that no right or interest possessed by him or to which he may be entitled can be affected or determined by any decision or adjudication of the issues between the parties which may be properly rendered in this proceeding.

Though the granting or the refusal of a request to intervene in a proceeding in mandamus is within the sound discretion of the court, there must be a proper showing of substantial interest in the subject matter of the litigation in order to authorize an intervention. "An individual or a corporation on whom no duty rests to perform the act sought to be enforced in mandamus proceedings, or who has no substantial and peculiar interest in the subject matter of the litigation, or whose interest will not be affected by a judgment awarding the writ cannot intervene therein as a party." 55 C. J. S., Mandamus, Section 254c. See also *Walker* v. *Hartford Accident and Indemnity Company*, 196 Ga. 361, 26 S. E. 2d 695; *Brownlow* v. *Wunch*, 102 Colo. 447, 80 P. 2d 444; *People* v. *Myers*, 50

Hun 479, 3 N. Y. S. 365, affirmed 112 N. Y. 676, 20 N. E. 417. The only proper parties to a proceeding in mandamus are the petitioner who claims to be interested in the performance of the duty sought to be enforced and the party upon whom such duty is imposed by law; and "it is inconsistent with the nature of the remedy to bring in as defendants parties only collaterally and incidentally interested in the subject of the controversy." Spelling on Injunctions and Other Extraordinary Remedies, Second Edition, Volume 2, Section 1640. Section 450a, High on Extraordinary Legal Remedies, Third Edition, contains this statement: "The right of third persons not parties to the action to interplead in proceedings in mandamus rests wholly upon statute, no such right existing at common law." The allegations of the petition do not bring the petitioner, Clifford Hatten, within the scope of any statute of this State which in any way authorizes intervention by him as a defendant in this proceeding. Under the foregoing authorities, the prayer of his petition to intervene as a defendant in this proceeding is refused and his petition is dismissed without prejudice to any right of the petitioner, Clifford Hatten, which may be recognized, protected, or enforced in any proper proceeding. By reason of the dismissal without prejudice of the petition to intervene, no question concerning the integrity of the ballots which might or could result from any of the alleged acts or omissions upon the part of the petitioners is presented in this proceeding, and no question of that nature is now considered or decided by this Court.

In resolving the questions which affect the merits of this controversy it is necessary to consider the pertinent provisions of the statutes of this State relating to the powers conferred and the duties imposed upon the petitioners, as precinct election officers, and the defendants, as members of a county board of canvassers, respectively, in conducting a primary election and in ascertaining and certifying the result of such election.

Section 15, Article 4, Chapter 3, Code, 1931, as amended, in part provides that the county court of every county

shall hold a regular or special session at the courthouse of the county on the second Tuesday of the month preceding that in which any primary election is to be held and shall appoint for each precinct in the county three commissioners of election and two poll clerks, who shall be legal voters in the magisterial district in which such precinct is located; that for every precinct in which there are three hundred but not more than four hundred registered voters there may be two boards of election officers; that for all precincts in which there are more than four hundred registered voters, there shall be two boards of election officers; that where two boards are used each board shall consist of three election commissioners and two poll clerks, one of which boards shall be designated the receiving board and the other the counting board; and that not more than two commissioners and one poll clerk of each board shall be appointed from the same political party.

Section 16, Article 4, Chapter 3, Code, 1931, requires each commissioner and each poll clerk of a primary election, before entering upon the discharge of his duties, to take and subscribe an oath in the form prescribed by that section. The form of oath to be taken by a commissioner contains the statement that he "will faithfully and impartially discharge the duties of commissioner of primary election assigned by law"; and the form of oath to be taken by a poll clerk contains the statement that he "will faithfully and honestly discharge my duties as clerk of the primary election" in the designated precinct in which he acts as such clerk.

Section 18, Article 4, Chapter 3, Code, 1931, as amended, dealing with the method of ascertaining the result of a primary election in each precinct, contains, among others, these provisions:

"When the polls are closed, the commissioners of election and the poll clerks shall proceed to ascertain the result of the election as follows:    * * *.

"(c)   The ballot box shall be opened and one of the

commissioners shall take therefrom one ballot at a time, in the presence of all the other officers, and shall announce what political party's ballot it is, and shall read therefrom the result of the vote on such ballot for each office, and hand the ballot to another of the commissioners differing in politics from himself, who, if satisfied that it is correctly read, shall string the same on thread. The ballots of each party shall be strung on separate threads. Each poll clerk shall keep an accurate tally of the contents of each ballot of each party on tally paper, which shall be provided for the purpose, so as to show the number of votes received by every person for any office. The ballots shall be counted as they are strung upon the thread, and, whenever the number counted for any party shall equal the number of votes entered upon the poll book of that party, any other ballot of such party found in the ballot box shall be immediately destroyed by fire or otherwise, without unfolding the same, or allowing any one to examine or know the contents thereof;

" (d)   As soon as the results at the precinct are ascertained, the commissioners and clerks shall make out and sign four certificates, for each party represented, of the vote for all candidates of such party, in the following form:  * * *.

"Three of such certificates of result of election, for each party, shall then be sealed in separately addressed envelopes, furnished for the purpose, and shall be disposed of by the precinct commissioners as follows: One certificate for each party shall be returned, under seal, to the clerk of the county court, with the election returns; one for each party shall be delivered by the commissioners to the clerk of the circuit court of the county; and one for each party shall be sent by registered mail to the secretary of state: Provided, however, That it shall not be necesary for the precinct commissioners and clerks to include, in the certificates to the secretary of state, the votes cast for any candidates for county and district offices, other than for members of the legislature. The one not sealed up shall

be posted on the outside of the front door of the polling place in said precinct.

"All ballots voted for candidates of each party shall be sealed up in separate envelopes and the commissioners and clerks shall each sign his name across 'the seal.

"In all precincts in which a receiving board and a counting board of election officers are appointed, the work of counting the votes and of ascertaining and certifying the result shall be divided between the two boards, and be performed by them, respectively, in the same manner provided in article five of this chapter for counting the votes and ascertaining and certifying the result of a general election."

The foregoing reference to Article Five includes Section 30, Article 5, Chapter 3, Code, 1931, which is in this language:

"When the polls are closed in the election precinct where two election boards have served, both the receiving and counting boards shall conclude the counting of the votes cast, the tabulating and summarizing of the number of the votes cast, unite in certifying and attesting to the returns of the election, and join in making out the certificates of the result of the election provided for in this article. They shall not adjourn until the work shall be completed.

"In all election precincts wherein the election shall be conducted by a single election board, immediately on closing the polls the commissioners and clerks shall proceed to ascertain the result of the election in the following manner: The ballot box shall then be opened, and one of the commissioners taking therefrom one ballot at a time, in the presence of all the other officers, shall read therefrom the designations of the offices to be filled, and the names of the persons voted for, for each office, and hand the ballot to another of such commissioners, differing in politics from himself, who, if satisfied that it was correctly read, shall string it on a thread. The contents of the ballots, as they are read, shall be entered by the poll clerks, under the supervision of the commissioners, on tally sheets for the purpose, by suitable marks, in ink,

made opposite to or under the name of each person voted for, so as to show the number of votes received by every person, for any office to be filled. The ballots shall be counted as they are strung upon the thread, and whenever the number counted shall be equal to the number of votes entered upon the poll books, the excess, if any, remaining in the ballot box shall immediately be destroyed by fire or otherwise, without unfolding or unrolling the same, or allowing any one to examine or know the contents thereof.

"They shall not adjourn until all of the votes are counted and certificates of the result made and signed by them. In precincts wherein there are double boards, the counting boards, in counting the ballots, shall proceed in the manner prescribed in this section."

Section 19, Article 4, Chapter 3, Code, 1931, relating to the delivery of primary election ballots, supplies and election returns, contains these provisions: "It shall be the duty of the commissioner of election at each precinct who was appointed to attend at the offices of the clerks of the county and circuit courts, respectively, and receive ballot boxes, ballots, registration list of voters, poll books and other supplies for the precinct, within twelve hours after the completion of the count, tabulation and declaration of the result, to return to the clerk of the county court the ballot boxes, registration list, and the several packages of ballots, poll books, tally sheets and certificates, and all other returns of election, except the packages to be delivered to the clerk of the circuit court, which latter packages shall contain one poll book, one tally sheet, and one certificate of each political party, which packages he shall deliver within the twelve hours aforesaid, to such clerk, and the certificate to be mailed to the secretary of state, and the one to be posted at the voting place in the precinct."

Section 17, Article 4, Chapter 3, Code, 1931, as amended, governing the manner of voting in a primary election contains in part this provision: "After preparing the ballot, the voter shall fold the same so that the face shall not be

exposed, but so as to show plainly the name of the political party and the names of the poll clerks signed thereon. The voter shall then announce his name and present his ballot to the commissioner of his party, if there be one, who shall hand the same to another election official, who shall deposit it in the ballot box, if such ballot is the official one and properly signed. When the voter has voted, he shall retire immediately from the election room, and beyond the sixty foot limit thereof, and shall not return, except by permission of the commissioners."

By the foregoing pertinent statutory provisions, the Legislature conferred upon the duly constituted commissioners and poll clerks, who serve as such in a primary election in each particular precinct, the exclusive power and authority, in the first instance, to count the ballots, except the ballots of challenged voters which are governed by Section 18a, Article 4, Chapter 44, Acts of the Legislature, 1941, Regular Session, and to ascertain and certify the result of the election in such precinct, and the power and the authority so conferred can not be exercised by any other agency or instrumentality. It is obvious that, in order to render a primary election valid and effective, the power and the authority so conferred must be exercised by the commissioners and the poll clerks who serve as such in each election precinct. It is also manifest that the applicable provisions of the foregoing statutes impose upon the commissioners and the poll clerks, who serve as such in each precinct in a primary election, the duty to count the ballots, except the ballots of challenged voters, and to ascertain and certify the result of the election, at the polling place in such precinct, before they adjourn; and likewise impose upon one of such commissioners the duty to return to the clerk of the county court the ballot boxes, the ballots and the other designated election records and returns.

The performance of the duties just enumerated is essential to the validity of the election in such precinct. Until and unless there is a count of the ballots an election is incomplete and ineffective. The language of the statutory

provisions which impose the above enumerated duties is that the precinct election officers shall count the ballots, and ascertain and certify the result of the election in such precinct, and that one of the commissioners shall return to the clerk of the county court the ballot boxes, the ballots and the other designated election records and returns. These particular statutory provisions which impose the specific duties just stated are mandatory in character. "Generally 'shall', when used in constitutions and statutes, leaves no way open for the substitution of discretion." *Baer* v. *Gore,* 79 W. Va. 50, 90 S. E. 530, L. R. A. 1917B, 723. In *State ex rel. Boone County Coal Corporation* v. *Davis,* 133 W. Va. 540, 56 S. E. 2d 907, this Court said: "The rule that the word 'shall' should be construed as mandatory has appropriate application when the provision of the statute relates to the essence of the thing to be done, or to matters of substance." The intention of the Legislature must govern, and if that intention is to make compliance with a statute essential to the validity of the act directed to be done, the statute is mandatory. *State* v. *Simmons,* 135 W. Va. 196, 64 S. E. 2d 503; *Mears* v. *Dexter,* 86 Va. 828, 11 S. E. 538; 59 C. J., pp. 1072 to 1075. In *Morris* v. *Board of Canvassers of City of Charleston,* 49 W. Va. 251, 38 S. E. 500, in which certain provisions of an election statute were held to be mandatory, this Court in the opinion used this language: "Lord Mansfield's test of whether a statute is mandatory is: 'Whether a statute is mandatory or not depends upon whether the thing directed to be done was of the essence of that required.' *Rex* v. *Loxdole,* Burrows, 445. In this case it is not only the essence of the thing that is required by the statute, but the very thing itself. Justice Thompson of the United States Supreme Court said: 'Affirmatives in statutes that introduce new laws imply a negative of all that is not in the purview. So that a law directing a thing to be done in a certain manner implies that it shall not be done in any other manner.' *U. S.* v. *1 case of Hairpencils,* 1 Paine 406."

Though the petitioners failed to perform the foregoing duties required of them as election officers in Precinct

No. 31, their failure to do so does not relieve them of that responsibility or automatically render their offices vacant. They are still required to perform those duties and must do so before the primary election in Precinct No. 31 is legally concluded.

Under Section 20, Article 4, Chapter 3, Code, 1931, when any primary election is held in a county or district, the county court sitting as a board of canvassers, shall meet at the courthouse of the county on the Friday next succeeding any election, and publicly, carefully and impartially ascertain the result of the election in the various election precincts, cause to be prepared and recorded, in the primary election precinct record book, tables which shall show as to each candidate for each political party for each office the number of votes cast for him in each precinct and the total number of votes cast in the entire county, and enter of record a certificate for each political party showing as to each candidate for each political party for each office the total number of votes cast for him in the entire county and the number of votes received by all the candidates of said party in each district. This section prescribes the form of the certificate which provides that the board of canvassers, "having carefully and impartially examined the returns of the primary election" held in the county, shall "certify" the number of votes received by each candidate of each political party for each office. This statute confers upon the board of canvassers for a primary election the only powers which it possesses and imposes the only duties which it is required to perform, except in connection with a recount of the votes. Upon a recount by a board of canvassers for a primary election, by virtue of Section 20a, Article 4, Chapter 44, Acts of the Legislature, 1941, Regular Session, the provisions of Article 5, Chapter 3, Code, 1931, as amended, relating to a board of canvassers in a final election, to the extent they are applicable, shall be operative in a primary election and control the action of a board of canvassers for such election.

Section 20, Article 4, Chapter 3, Code, 1931, clearly does not empower or authorize a board of canvassers, in the

first instance, to count the ballots cast or to ascertain and certify the result of the primary election held in each precinct. The language of the section does not expressly or by necessary implication confer such power or authority upon such board of canvassers. The prescribed form of the certificate required of the board of canvassers indicates clearly that before it can make the required certificate the ballots must have been counted, except the ballots of challenged voters, and the results of the election ascertained and certified, in the first instance, by the election officers in each precinct as expressly provided by the statutes which impose that duty upon those election officers. The canvass of the result of a primary election is governed exclusively by this section and in conducting such canvass it is not necessary for a board of canvassers for a primary election to open the sealed package of ballots cast at such election, to count such ballots, or to enter the number upon its record. *State ex rel. Fanning* v. *County Court of Mercer County,* 129 W. Va. 584, 41 S. E. 2d 855.

It is the settled law of this State, announced in many decisions of this Court, that a board of canvassers, being created by statute, can do only that which the statute authorizes it to do. *State ex rel. Bumgardner* v. *Mills,* 132 W. Va. 580, 53 S. E. 2d 416; *Funkhouser* v. *Landfried,* 124 W. Va. 654, 22 S. E. 2d 353; *Poteet* v. *County Commissioners,* 30 W. Va. 58, 3 S. E. 97; *Brazie* v. *Fayette County Commissioners,* 25 W. Va. 213. The primary duty of a board of canvassers for a final election is to ascertain and declare the true result of the election in a county according to the election returns. *State ex rel. Bumgardner* v. *Mills,* 132 W. Va. 580, 53 S. E. 2d 416; *Sanders* v. *Board of Canvassers,* 79 W. Va. 303, 90 S. E. 865; *State ex rel. Gabbert* v. *Robinson,* 88 W. Va. 708, 107 S. E. 763; *State ex rel. Sizemore* v. *Hunter,* 86 W. Va. 544, 103 S. E. 678. In discussing the powers and the duties of a board of canvassers for a final election, this Court said in *State ex rel. Hatfield* v. *Farley,* 97 W. Va. 695, 126 S. E. 413: "The duty of the Board of Canvassers is to canvass the returns of the election and accurately ascertain the result thereof from said returns, and in doing so,

the Board is required first to ascertain whether or not the returns placed before them are, in fact, the returns of the said election, and that they are in proper form, and if not in proper form, to have them corrected so as to conform to the requirements of the law. They have the right to have the officers of the election and others summoned before them for these purposes and these purposes alone." In dealing with the same subject the opinion in *Brown* v. *Randolph County Court*, 45 W. Va. 827, 32 S. E. 165, employs this language: "The board of canvassers is merely a body to canvass the returns of elections for public officers, acting simply on the certificates sent from voting precincts by certain officers holding the election, and recounting ballots when demand is made." ·

It is manifest that there can be no canvass of the returns of a primary or other election until such returns exist and that there can be no returns of the election, which must necessarily include the count of the ballots and the certificates of the result, until after the ballots are counted and the certificates are made by the election officers for the precinct in which the election is held. A board of canvassers has no power or authority and, of course, is under no duty in the first instance, to count the ballots, tabulate the votes, or certify the result of an election. It can not ascertain the result of the election until after it receives the election returns made by the election officers and it can "recount" the ballots only when a recount has been demanded and only after the ballots have first been counted by the election officers in the precinct in which they were cast. It can not terminate the power or the authority of duly constituted precinct election officers who, in the first instance, are appointed by the county court or vacate their offices.

As already indicated, the petitioners, as the duly constituted election officers in Precinct No. 31, have the power and the authority and are subject to the duty to count the ballots in that precinct, except the ballots of challenged voters, to tabulate the votes, and to certify the result of the primary election held on May 13, 1952, and

by so acting conclude the election in that precinct and, within twelve hours after performing the foregoing acts, to deliver the ballot boxes, the ballots, the certificates of the result, and the other election records and papers to the persons respectively designated by law to receive them. Until those acts are performed by the petitioners, neither the defendants, S. P. Fry, Oscar Watts, and W. Frank Harrison, members of the county court and as such ex-officio members of the board of canvassers, nor the defendant, App Queen, clerk of the county court, has any right to the possession of the ballot boxes and their contents. The defendants, S. P. Fry, Oscar Watts, and W. Frank Harrison, acting as a board of canvassers for the primary election held on May 13, 1952, are also without power or authority to terminate the power or the authority of the petitioners, as election officers for Precinct No. 31, or to vacate their offices and, for that reason, the order of those defendants, entered while sitting as a board of canvassers on May 20, 1952, attempting to accomplish those results, is of no force or effect. It is also the duty of the defendants, who now have possession or control of the ballot boxes and their contents, to deliver them forthwith to the petitioners to enable them, at the polling place in Precinct No. 31, privately and without delay, to count the ballots, tabulate the votes, and ascertain and certify the result of the primary election held in that precinct on May 13, 1952, and, after so doing, to return them to the persons respectively designated by law to receive them. Performance of the duty of the defendants to deliver possession of the ballot boxes and their contents to the petitioners for that purpose may be enforced by the petitioners in a proceeding in mandamus.

As the petitioners have a clear legal right to the immediate possession of the ballot boxes and their contents, for the purpose of performing the foregoing acts required of them, they were entitled to the writ of mandamus heretofore awarded against the defendants by this Court by its order of May 29, 1952.

*Writ awarded.*

LOVINS, JUDGE, dissenting:

I dissent from the conclusion reached in this case.

I am in agreement with the first point of the syllabus, to the effect that the petitioner, Hatten, had no right to be admitted as an intervenor in this proceeding, but I do not agree that the relators had a clear legal right to the relief sought by them in this proceeding.

There is no common law principle applicable to modern elections to political office. Authority for elections, primary and general, is created by statutory and constitutional provisions.

An election is not ended until the returns of the election have been canvassed and the results declared officially by a board, or by a court authorized by law to do so. *Daugherty v. Mabscott*, 131 W. Va. 500, 48 S. E. 2d 342.

Various steps are provided by our statutes for ascertaining and declaring the results of an election. The first step is the counting and certifying of the returns by the precinct officials holding the election. Code, 3-5-30. The second step is the canvassing of such returns. Code, 3-5-33. The third step is a recount of ballot returns where such recount is demanded. Code, 3-5-33. The fourth step is a contest, when properly initiated, to be heard by the county court as to county officials. Code, 3-9-1, *et seq.* And the fifth step is a determination and judgment by a court of competent jurisdiction. Code, 3-9-3.

It is not disputed in the instant proceeding that the precinct officials in Precinct No. 31, Wayne County, failed to count the ballots and certify the results of the election held in that precinct, and that one of the commissioners of election of such precinct delivered the election returns in a locked ballot box to the clerk of the county court.

In my opinion, when the ballots and other election material were delivered to the clerk, the functions of the commissioners and clerks in Precinct No. 31 had ended and the duty of ascertaining and counting the votes cast in

such precinct devolved upon the canvassing board of Wayne County.

I think that the court's opinion in this case exalts form to an unusual degree and disregards substance. It is true that Code, 3-5-30 provides in some detail for the acts to be performed by the precinct officials of elections, but I think that the provisions of that statute are directory.

There is a basic principle in the law of elections which is well stated as follows: "In general those statutory provisions, which fix the day and the place of the election, and the qualifications of the voters, are substantial and mandatory, while those, which relate to the mode of procedure, in the election, and to the record and return of the results, are formal and directory. Statutory provisions relating to elections are not rendered mandatory, as to the people, by the circumstance that the officers of the election are subjected to criminal liability for their violation. The rules, prescribed by the law for conducting an election, are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes, and to ascertain, with certainty, the result. Generally such rules are directory, not mandatory; and a departure from the mode prescribed will not vitiate an election, if the irregularities do not deprive any legal voter of his vote, or admit an illegal vote, or cast uncertainty on the result, and have not been occasioned by the agency of a party seeking to derive a benefit from them." Paine, The Law of Elections, §498.

To the same effect, McCrary on Elections, 4th Ed., Section 225, page 169: "If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute must so hold, whether the particular act in question goes to the merits, or affects the result of the election, or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the Legislature. But if, as in most cases, that statute simply provides that

certain acts or things shall be done within a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election."

In this jurisdiction this court has held provisions of statutes relating to elections as directory. See *Revercomb* v. *Sizemore*, 124 W. Va. 700, 22 S. E. 2d 296; *Hatfield* v. *Board of Canvassers*, 98 W. Va. 41, 126 S. E. 708. Irregularities in the conduct of elections may be disregarded unless they are declared to be fatal to its validity or such irregularities change the results or render it impossible to ascertain the same. *Williamson* v. *Musick*, 60 W. Va. 59, 53 S. E. 706.

The face of the ballot is prima facie evidence of the result and if the integrity of such ballot has been maintained, it should be counted. *Stafford* v. *Sheppard*, 57 W. Va. 84, 50 S. E. 1016. See *Kirkpatrick* v. *Deegans*, 53 W. Va. 275, 44 S. E. 465, for distinction between mandatory and directory statutes and the results stemming from violations of either.

If a fair election has been held, the mistakes and irregularities done and created by officers of election do not affect it. *Morris* v. *Board of Canvassers*, 49 W. Va. 251, 38 S. E. 500.

I do not think that the precinct commissioners and poll clerks of the election should be permitted to return the ballots to the clerk of the county court without counting them, since they are directed to perform that act by provisions of Code, 3-5-29, as amended by Chapter 50, Acts of the Legislature, Regular Session, 1943, and upon their failure to do so, a criminal penalty is imposed. But in the instant case the ballots have been delivered to the clerk of the county court of Wayne County without ascertaining the results of the election in Precinct 31. In that instance I think that the duty not performed by precinct election officers devolved upon the canvassing board of that county.

I am aware of the decisions of this court which hold that the canvassing board is a body having limited power, but it certainly has the power to canvass the returns of an election, which power is expressly given by statute, and if no certification of the result has been made by the precinct officials, it is reasonable to say that the canvassing board, by necessary implication, has the power and authority to count the ballots.

In the case of *State ex rel. Waggoner* v. *Russell* (Neb.), 51 N. W. 465, 15 L.R.A. 740, it was held that a peremptory writ of mandamus would not be granted requiring precinct officials of an election to count rejected ballots after the ballots had been delivered to the county clerk and were beyond their control.

A logical application of the principle announced in the *Waggoner* case leads to the converse, that the precinct officials in the instant case, not being subject to a writ of mandamus after delivering the ballots and other material to the clerk of the county court, would not be entitled to a peremptory writ of mandamus compelling the canvassing board and the clerk of the county court to return the ballots to them for counting, when they had ceased to function as precinct election officials.

In the case of *Sanders* v. *Board*, 79 W. Va. 303, 90 S. E. 865, this court held that "Where the ballots, poll books, tally sheets, and certificates have been stolen after being placed in the hands of the clerk of the county court and before being laid before the canvassing board for inspection, then it is the duty of the board of canvassers to examine and consider any and all reliable evidence available which will enable the board to ascertain the contents of such certificates; and for that purpose they may require the attendance of the election commissioners, poll clerks, or other persons present at the election, to appear and testify concerning the same; and any board of canvassers failing or refusing to perform such duty may be required to do so by writ of mandamus."

Though the facts in the instant case are not exactly

similar to the *Sanders* case, the decision of this court in that case plainly holds that in the absence of a certificate of results of the election, the board of canvassers may be compelled by mandamus to ascertain by any lawful means available to such board the true results of an election. In the instant case, the ballots actually cast in Precinct 31 were available for counting. Applying the rationale of the opinion in the Sanders case to the facts of this case, I can see no reason for requiring the ballots and other election material to be turned over to precinct election officers for the performance of an action which could be performed as well by the canvassing board.

There is another holding in the court's opinion which I regard as requiring the performance of an unnecessary detailed action; that is to say, returning the ballots to the precinct where they were received and there counting them. A similar question was before the Supreme Court of the United States in the case of *United States* v. *Brewer,* 139 U. S. 278, 35 L. Ed. 190, 11 S. Ct. 538, where it has held that, in the absence of a statute so requiring, votes cast at an election need not be counted at the place where such votes were cast. The statement of the general rule will be found in the following language: "In the absence of a mandatory statute so requiring, ballot boxes need not be opened and the votes counted at the place where the election was held, so that the counting of votes elsewhere does not vitiate the election." 18 Am. Jur., Elections, §250. See 29 C.J.S., Elections, §224.

For the foregoing reasons, I would have denied the writ of mandamus prayed for by relators.