116 S.E.2d 125 (1960)
STATE ex rel. C. C. CHAMBERS
v.
COUNTY COURT OF LOGAN COUNTY et al.
No. 12063.
Supreme Court of Appeals of West Virginia.
Submitted July 22, 1960.
Decided July 23, 1960 (Order).
Opinion Filed September 13, 1960.
*126 Charles R. McElwee, Charleston, for relator.
Carl A. McComas, Huntington, William L. Jacobs, Parkersburg, for respondents.
CALHOUN, Judge.
This is an original proceeding in mandamus in the name of the State of West Virginia at the relation of C. C. Chambers against The County Court of Logan County, West Virginia, a corporation, and W. E. Bivens, Okey Justice, and John R. Browning, as Commissioners of the County Court of Logan County, West Virginia, and, as such, ex-officio members of the Board of Canvassers of the said County, and Floyd Dingess, Jackie Hobbs, N. J. Butcher, Tina Smith, Twila Doutt, Okey Hager, Tracy Gore, Walter Ferrell, David Chapman, Theodore Yeager, Clint Gore, Jim Bob Gore, Richard R. Wilding, Ada Drake, E. G. Campbell, Ernest Dean, F. M. Burgess, Helen Allen, Stanley F. Cieplechowicz, Anna R. Phillips, Elbert Chafin, Jr., Jo Alice Browning, William McKnight, Carrol Sue Chafin, C. D. McKinney, Carl T. Lee, James Montgomery, Thomas Bias, Jr., Hallis Lancaster, Cecil Boyd, Franklin Manns, Harold Dailey, Wayne Salmons, Jess Bliffins, Kenneth Maynard, James M. Kirk, and Curtis L. Taylor, election officers in seven precincts in the May 10, 1960, primary election in Logan County, West Virginia, and Luther Mounts, as Clerk of The County Court of Logan County, West Virginia, and Claude A. Joyce, individually.
This case involves the nomination of a Democratic candidate for judge of the Seventh Judicial Circuit, composed of Logan County, in the primary election which was held May 10, 1960, in which the relator, C. C. Chambers, and Claude A. Joyce, respondent, were the only candidates. More specifically, the controversy involves eighteen absent voters' ballots which precinct election officials failed to count and record on voting machines at seven precincts. One aspect of the same controversy was before the Court in an original proceeding in mandamus, decided on July 12, 1960, in which it was held that the board of canvassers had no authority in the first instance to count the eighteen ballots in question. State ex rel. Joyce v. Bivens et al., W.Va., 114 S.E.2d 901. Reference is *127 made to the opinion in that case for a more detailed statement of the facts pertinent to the instant case.
The petition herein prays that a writ of mandamus be awarded against the precinct election officials of the seven precincts in question, commanding them to reconvene at the several polling places, or otherwise, as the Court may direct, on a day and at a time to be fixed by the Court, and then and there to take such of the eighteen absent voters' ballots as had been delivered to their respective precincts prior to the closing of the polls on primary election day, and follow the procedures with respect to such ballots prescribed by Code, 3-5A-20, as amended, and if such ballots are unchallenged, to record them on the voting machines used in such precincts; after such recordation to follow the procedure with respect to such machines as is prescribed by Code, 3-5A-23, as amended; to retabulate, reascertain and recertify the results of the primary election; and, after having done so, to return the ballots, certificates and the keys to the machines to the persons designated by law to receive them.
The petition further prays that the respondent, Luther Mounts, Clerk of The County Court of Logan County, be commanded to make the voting machines for the seven precincts available for the recordation thereon of the eighteen absent voters' ballots on a date and at a time and place to be fixed by the Court, and, after such ballots have been so recorded and after the voting machines have been locked by the election officers of the several precincts, as provided by Code, 3-5A-23, as amended, to return the voting machines to their place of storage: to furnish to the election officers of the seven precincts the poll books, registration records, forms and such other supplies and materials as may be necessary; and to deliver the absent voters' ballots in question to the election officers of the several precincts.
The petition further prays that the commissioners of the county court, and as such ex officio members of the board of canvassers, respondents, be commanded to reconvene as a board of canvassers and determine the validity of any of the eighteen absent voters' ballots which may have been challenged in accordance with Code, 3-4-18a, as amended and publicly, carefully and impartially to ascertain the results of such election in the seven precincts; and thereafter to certify the results of the primary election held in Logan County on May 10, 1960, showing the votes cast in the several precincts of the county, including the seven precincts in question, in accordance with Code, 3-4-20.
By an order entered on July 23, 1960, the Court directed that a peremptory writ of mandamus issue commanding the precinct election officials for the seven precincts in question to reconvene at ten o'clock a. m., on July 27, 1960, at the building wherein the voting machines in question are stored near the City of Logan, in Logan County, and then and there to follow the procedures with respect to the absent voters' ballots in the several precincts as is prescribed by Code, 3-5A-20, as amended; if such ballots be not challenged to record them on the voting machines used in the several precincts on primary election day and, after such recordation, to follow the procedure with reference to such machines as is prescribed by Code, 3-5A-23; to retabulate the results and reascertain and recertify the results of the primary election held in their respective precincts on May 10, 1960; and, after having done so, to return the ballots, certificates and keys to the voting machines to the persons designated by law to receive them; and commanding respondents, Luther Mounts, Clerk of The County Court of Logan County, and W. E. Bivens, Okey Justice, and John R. Browning, Commissioners of The County Court of Logan County and as such ex officio the Board of Canvassers of Logan County, to perform the several duties enjoined upon them by law and in accordance with the prayer of the petition. This opinion is now announced for the purpose of stating the *128 reasons which prompted the Court to enter the order herein on July 23, 1960.
Courts are loathe to disfranchise qualified voters who have done all the law required of them. "Courts * * * follow a liberal policy, to the end that voters be not deprived of the exercise of their constitutional right of suffrage." Brown v. Carr et al., 130 W.Va. 455, 460, 43 S.E.2d 401, 405. Qualified absent voters who have done everything required of them are entitled to have their ballots counted, and failure of the election officers to perform their duties will not make such ballots void. Hatfield v. Board of Canvassers, 98 W.Va. 41, 126 S.E. 708; State ex rel. Joyce v. Bivens et al., W.Va., 114 S.E.2d 901; Brown v. Grzeskowiak, 230 Ind. 110, 101 N.E.2d 639, 102 N.E.2d 372; Mullen v. Heffernan, 193 Misc. 334, 84 N.Y.S.2d 571; Stratton v. Hall, Tex.Civ.App., 90 S.W.2d 865; Moore et al. v. Pullem et al., 150 Va. 174, 142 S.E. 415; 18 Am.Jur., Elections, Section 225, page 332.
It was contended by Claude A. Joyce, respondent, that the eighteen absent voters whose ballots are involved in this controversy are in the same position as voters who appear in person at the proper polling place in order to vote, but too late to be admitted inside before the hour for the closing of the polls. We can not agree to the soundness of such reasoning. By the exercise of greater diligence the hypothetical voters may appear at the polling places sufficiently early to be admitted. Their own lack of diligence in this respect may deprive them of their right to vote without any fault or dereliction on the part of the precinct election officials. On the other hand, the eighteen absent voters whose ballots are here in question have done everything required of them by law in order to entitle them to have their votes recorded and tabulated, and the difficulty in relation to their ballots arises solely from the dereliction of the precinct election officials. Untold opportunities for fraud and for defeating the will of the electorate would result if precinct election officials could nullify absent voters' ballots, or other ballots, by a failure or refusal to perform the ministerial duties enjoined upon them by law in relation to such ballots.
It is true that Code, 3-5A-20, as amended, contemplates that the precinct election officials "shall prior to the close of the polls, * * * vote or record such votes on the voting machine." (Italics supplied.) In the case of Moore v. Pullem, 150 Va. 174, 142 S.E. 415, 422, the precinct election officials failed or refused to count certain absent voters' ballots. In holding that it was proper by mandamus to require them to do so at a later time, the Court stated:
"As we have already indicated, the judges of election at Fraley precinct had failed to discharge a mandatory ministerial duty in refusing to count such of these 63 ballots as had been deposited by legal voters, so offered to them under the Absent Voters Law. It cannot be fairly questioned that, when public officials charged with a ministerial duty fail to perform it at the time required by law, they can be compelled by mandamus to discharge such duty as soon thereafter as is possible. The neglect of such a duty at the right time does not relieve those at fault from its subsequent performance, if this is essential to preserve substantial rights. * * *

* * * * * *
"The contention here is that, because the ballots were not counted and certified on the night of the election, therefore they could never be thereafter counted by the judges of election. We are of opinion that this is an erroneous view. To sustain it would not only deny the right of legal voters to participate in the election, but, if the counting of such ballots would have changed the result, the failure to do so imposes an improper burden upon those candidates for office *129 who, if they had been counted, would have shown that they were legally elected."
The Supreme Court of Indiana, in discussing the status of absent voters' ballots which had been delivered to and received by the precinct election officers in the case of Brown v. Grzeskowiak, 230 Ind. 110, 101 N.E.2d 639, 647, 102 N.E.2d 372, quoted from a prior decision as follows: "`If the voter * * * gets his vote inside the election room in the manner and within the time prescribed by law, then, so far as he is concerned, he has voted, and, if the officers, inspectors, and judges and clerks fail to do their duty in any way, then that is deemed by the law as directory, and the one who is voting has a right to have his vote deposited in the ballot box and counted, even though it be after six o'clock. It is the voter himself who has the right.'" It can not be said that the eighteen absent voters whose ballots are here involved failed to "vote" before the closing of the polls on primary election day merely because the precinct election officials failed in the performance of the mandatory ministerial duties imposed upon them by law in order to bring about the ultimate consummation of "voting" in the manner prescribed by law for absent voters.
Mandamus is the proper remedy to compel election officers to discharge their statutory duties set forth in Chapter 3 of the Code, relating to elections. "Any officer or person, upon whom any duty is devolved by this chapter, may be compelled to perform the same by writ of mandamus." Code, 3-5-41.
The duties of precinct election officers and the procedures to be followed with respect to absent voters' ballots are prescribed by Code, 3-5A-20, as amended, and Code, 3-6-10, as amended. Where voting machines are in use, as in the present case, both sections apply. Code, 3-5A-20, as amended, is as follows:
"When absent voter's ballots have been voted and delivered to the election board of any precinct, the election commissioners shall as time permits proceed to determine the legality of such ballots as prescribed in sections one to fifteen * * * of article six of this chapter, and shall prior to the close of the polls, before sealing the operating lever and before unlocking the counter compartment, vote or record such votes on the voting machine. Such recording of absent voter's ballots shall be done by one of the election commissioners and the act of casting such votes shall be performed in the presence, and under the careful observation and full view, of all members of the precinct election board, and the votes as indicated by the voting pointers shall not be registered until each member of such board is satisfied that the arrangement of such voting pointers fully carries out the intent of the voter as shown by the cross marks on the paper ballot.
"After completion of the count, absentee ballots shall be enclosed in a sealed package, properly endorsed, and returned and filed with the statement of returns."
The other section, Code, 3-6-10, as amended, provides in detail the procedures to be followed and the duties to be performed by the election officials in the disposition of absent voters' ballots, "At any time between the opening and closing of the polls on such election day."
The election officials of the seven precincts failed to take any action on election day relative to the eighteen absent voters' ballots received by them, respectively, but instead returned these ballots to the county clerk, notwithstanding the fact that Code, 3-5-30, directs that: "They shall not adjourn until the work shall be completed", and, further, "They shall not adjourn until all of the votes are counted and certificates of the result made and signed by them." Such certificates as were made by the precinct officers of the seven precincts did not *130 include any of the eighteen absent voters' ballots, nor were any of such ballots challenged. In short, the officials of the seven precincts did not complete their statutory duties on election day; and, therefore, the election was incomplete. The rule enunciated in State ex rel. Thompson v. Fry et al., 137 W.Va. 321, 334, 335, 71 S.E.2d 449, 456, 457, is applicable to this case: "The performance of the duties just enumerated is essential to the validity of the election in such precinct. Until and unless there is a count of the ballots an election is incomplete and ineffective. The language of the statutory provisions which impose the above enumerated duties is that the precinct election officers shall count the ballots, and ascertain and certify the result * *. Though the petitioners failed to perform the foregoing duties required of them as election officers in Precinct No. 31, their failure to do so does not relieve them of that responsibility or automatically render their offices vacant. They are still required to perform those duties and must do so before the primary election in Precinct No. 31 is legally concluded." To the same effect, see Moore v. Pullem, 150 Va. 174, 142 S.E. 415.
Whether the county court, sitting as a board of canvassers, upon adjournment is functus officio depends upon whether or not it has properly completed all its statutory duties and functions as such board. Its primary duty is to ascertain and declare the true result of the election. Where the canvassing board has properly and completely discharged its statutory duties and adjourned, it is functus officio. State ex rel. Wilson v. County Court of Barbour County et al., W.Va., 114 S.E.2d 904. Where the canvassing board has failed properly and legally to discharge its statutory duties, as by counting absent voters' ballots which it had no authority to count, it may be reconvened after its adjournment to correct its canvass. State ex rel. Joyce v. Bivens, et al., W.Va., 114 S.E.2d 901. A fortiori, where the precinct officials have unfinished work to be completed which will change the result of the vote in such precincts, it follows that the canvassing board can not render a true and complete county-wide canvass without the final recertifications from such precincts. "It is manifest that there can be no canvass of the returns of a primary or other election until such returns exist and that there can be no returns of the election, which must necessarily include the count of the ballots and the certificates of the result, until after the ballots are counted and the certificates are made by the election officers for the precinct in which the election is held. * * * It [board of canvassers] can not terminate the power or the authority of duly constituted precinct election officers who, in the first instance, are appointed by the county court or vacate their offices." State ex rel. Thompson v. Fry, 137 W.Va. 321, 338, 71 S.E.2d 449, 458.
In view of the peculiar circumstances of this case, including the fact that, there are but eighteen ballots in question in this case, divided among seven precincts, and in some of the seven precincts only one or two ballots to each, and the further fact that the voting machines on which the ballots, if not challenged, are to be recorded, are assembled in a locked building near the county seat of Logan County, the precinct officials were directed to assemble at such building, rather than at the several polling places, and there to complete their duties at ten o'clock a. m., on July 27, 1960, and the county clerk at such time and place was directed to deliver the requisite keys, poll books, registration lists, forms and supplies and the eighteen ballots in question to such officers. Under different circumstances, not involving voting machines, in the case of State ex rel. Thompson v. Fry, 137 W.Va. 321, 71 S.E.2d 449, the precinct officials were directed to return to the precinct voting place where they could privately and without delay count and tabulate all the ballots that had been cast at such precinct, but which had not previously been counted.
From the petition it appears, and the fact is not disputed, that if the eighteen absent *131 voters' ballots in question are not challenged, and are cast and recorded on the voting machines as required by law, and proper certifications made to the canvassing board, the petitioner will be the Democratic nominee for judge of the Seventh Judicial Circuit, composed of Logan County, by a majority of four votes; but if such eighteen absent voters' ballots are not so counted, petitioner will not be the nominee.
The petitioner having a clear legal right to the relief prayed for against the several precinct officers of the seven precincts, the County Clerk and The County Court of Logan County, sitting as a board of canvassers, was entitled to the writ of mandamus heretofore awarded against the respondents by this Court by its order of July 23, 1960.
Writ awarded.
BROWNING, J., deeming himself disqualified, did not participate in the consideration or decision of this proceeding.